IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PTL Holdings LLC, *et al.*,[1] | ) Case No. 11-12676 (___) |
| | ) |
| Debtor. | ) |
| | ) |

**MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING INCURRENCE BY THE DEBTORS OF POSTPETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (II) GRANTING LIENS, (III) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. § 363 AND PROVIDING FOR ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY AND (V) SCHEDULING A FINAL HEARING**

PTL Holdings LLC ("**Holdings**") and Premier Trailer Leasing, Inc. ("**Premier**"),

the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), submit this

motion (the "**Motion**"), for entry of an interim order on an expedited basis (the "**Interim**

**Order**") substantially in the form attached hereto as **Exhibit A**, and following a final hearing to

be set by the Court (the "**Final Hearing**"), entry of a final order (the "**Final Order**"), pursuant to

sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), Rule 4001 and 9014 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy**

**Rules**"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the

District of Delaware (the "**Local Rules**"), authorizing the Debtors to (a) incur post-petition,

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: PTL Holdings LLC (6723) and Premier Trailer Leasing, Inc. (3906). The Debtors' address is 3600 William D. Tate Avenue, Suite 300, Grapevine, Texas 76051.

priming secured financing in the principal amount of up to $1,500,000 as an extension of the

Debtors' existing working capital secured financing (without any roll-up of prepetition debt), (b)

use cash collateral in which the Debtors' prepetition lenders may have an interest, and (c)

provide adequate protection to such lenders.

In support of this Motion, the Debtors rely on the *Declaration of Scott J. Nelson*

*in Support of First Day Motions* (the "**First Day Declaration**"). In further support of this

Motion, the Debtors represent as follows:

## JURISDICTION

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M).  Venue is proper in

this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

sought herein are sections 105, 361, 362, 363(b), 364 and 507 of the Bankruptcy Code.

## OVERVIEW

2.     By this Motion, the Debtors seek the entry of an Interim Order and a Final

Order, which:

　　　　a.     Authorize the Debtors to obtain credit and incur debt, pursuant to
sections 363 and 364 of the Bankruptcy Code, up to the principal amount of
$1,500,000, plus any interest, fees and other obligations accrued thereon (the
"**DIP Obligations**"), which amount may be incurred in full prior to the Final
Hearing, from Garrison Loan Agency Services LLC, as administrative agent (the
"**First Lien Agent**"), for all the lender parties (the "**First Lien Lenders**",
collectively with the First Lien Agent, the "**First Lien Secured Parties**") secured
by priming first priority, valid, perfected and enforceable liens on property of the
Debtors' estates pursuant to sections 105, 361, 362, 364(c)(2), 364(c)(3) and
364(d)(1) of the Bankruptcy Code, and with priority, as to administrative
expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the
terms and conditions summarized herein;

　　　　b.     Authorize the Debtors to enter into and perform the Ratification
and Amendment Agreement and Consent to Use of Cash Collateral dated as of

DOCS_SF:77448.3 70938-001

August 23, 2011, a copy of which is attached hereto as **Exhibit B** (the "**Ratification Agreement**"), which ratifies certain aspects of the First Lien Credit Agreement (as defined below) and provides for new postpetition loans up to the principal amount of $1,500,000, without any roll-up of prepetition debt;

c.      Grant liens to secure the DIP Obligations in favor of the First Lien Agent on all present and after-acquired assets and property of the Debtors pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, subject to the Carve-Out (as defined below) and excluding any actions maintained or taken pursuant to sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or applicable state fraudulent transfer law ("**Avoidance Actions**") and the proceeds thereof;

d.      Grant to the First Lien Agent superpriority administrative claim status in respect of all DIP Obligations pursuant to section 364(c)(1) of the Bankruptcy Code, subject to the Carve-Out and excluding Avoidance Actions and the proceeds thereof;

e.      Authorize the use of "cash collateral" of the Debtors as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**") in which the First Lien Secured Parties and the Second Lien Agent (as defined below) (for the benefit of the Second Lien Lenders (as defined below)) may have an interest;

f.      Grant the First Lien Agent (for the benefit of the First Lien Lenders) and the Second Lien Agent (for the benefit of the Second Lien Lenders) replacement liens and a superpriority claim to the extent of any diminution in the value of the First Lien Secured Parties' and the Second Lien Lenders' respective interests, if any, in the Prepetition Collateral (as defined below) as adequate protection for the use of cash collateral and for the imposition of the automatic stay, subject to the Carve-Out and excluding Avoidance Actions and the proceeds thereof;

g.      Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Ratification Agreement and the Interim Order and the Final Order;

h.      Schedule the Final Hearing within 30 days after the commencement of these cases to consider entry of the Final Order and approving the form of notice with respect to the Final Hearing; and

i.      Waive any applicable stay as provided in the provisions of the Bankruptcy Rules and providing for immediate effectiveness of the Interim Order and the Final Order.

## CONCISE STATEMENT OF RELIEF REQUESTED

3.     In accordance with Bankruptcy Rule 4001 and Local Rule 4001-2, below

is a summary[2] of the terms of the proposed financing arrangements:

        a.     <u>Obligated Parties</u>:  Premier and Holdings.  Premier is the Borrower and Holdings is the Guarantor.

        b.     <u>First Lien Agent/Lenders</u>:  Garrison Loan Agency Services LLC is the First Lien Agent and the First Lien Lenders are affiliates of the First Lien Agent.

        c.     <u>Amount and Type of Facility</u>:  An extension of the Debtors' existing prepetition revolving facility by up to $1,500,000 in principal obligations, plus any interest, fees and other obligations accrued thereon.  Ratification Agreement at section 1.2(g).

        d.     <u>Availability</u>:  The Debtors seek authority to borrow up to the full principal amount of $1,500,000 in DIP Obligations pursuant to the Interim Order.  Interim Order at ¶¶2(a) and 2(b)

        e.     <u>Use of Proceeds</u>:  Loan proceeds may be used to (a) pay interest, costs, and expenses incurred with respect to the DIP Obligations, and (b) finance ongoing general working capital needs of the Debtors, including, but not limited to chapter 11 professional fees and expenses (in each case, not otherwise prohibited by the Ratification Agreement), and the Debtors shall not use any portion of the proceeds of the post-petition financing, directly or indirectly in excess of amounts set forth in a budget approved by the First Lien Agent (the "**Budget**"), subject to certain variances and tested on a weekly cumulative basis.  Interim Order at ¶4; Ratification Agreement at sections 5.3 and 6.7.  The initial Budget is attached hereto as **<u>Exhibit C</u>**.

        f.     <u>Priority and Security</u>:  The DIP Obligations will secured by first priority priming liens against all assets of the Debtors and their estates pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, subject to the Carve-Out and excluding Avoidance Actions and the proceeds thereof.  The DIP Obligations also shall be treated as superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, subject to the Carve-Out

---

[2] The summaries and descriptions of the terms and conditions of the Ratification Agreement, the Interim Order and the Final Order set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summaries and descriptions herein are qualified in their entirety by the terms of the Ratification Agreement, the Interim Order and the Final Order.  In the event there is any conflict between this Motion and the Ratification Agreement, the Interim Order or the Final Order, the Ratification Agreement, the Interim Order or the Final Order, as applicable, will control in all respects.

and without any rights as to Avoidance Actions and the proceeds thereof. Interim Order at ¶¶2(d), 2(e) and 3.

g.    Maturity Date:  The maturity date of the DIP Obligations will be the earliest to occur of:  (i) October 7, 2011, (ii) the failure of the Debtors to obtain a Final Order on or before the date which is 30 days after the Petition Date, (iii) the effective date of a plan of reorganization, or (iv) the occurrence of an event of default under the First Lien Credit Agreement, as modified by the Ratification Agreement (the "**Commitment Termination Date**").  Interim Order at ¶14.

h.    Interest Rates and Interest Period:  The interest rate for the DIP Obligations will be the existing variable rate for Base Rate Loans under the First Lien Credit Agreement, which is currently 5.75% per annum.

i.    Carve-Out:  The DIP Liens, DIP Superpriority Claims, the First Lien Lender Replacement Liens, the Second Lien Lender Replacement Liens, and the Prepetition Superpriority Claims (all as defined in the Interim Order) shall be subordinate only to the following (the "**Carve-Out**"):  (a) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), together with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the Bankruptcy Court; (b) allowed fees and expenses of attorneys, accountants, financial advisors, consultants and other professionals employed by the Debtors and any official committee(s) of creditors pursuant to Sections 327 and 1103 of the Bankruptcy Code in the amounts set forth in the Budget accrued through the Commitment Termination Date, and up to the amount of $25,000 accrued thereafter.  Interim Order at ¶10(a).

j.    Conditions Precedent:  The conditions precedent to borrowing under the Ratification Agreement are customary and include, among other things, that all representations and warranties are accurate and no material adverse event has occurred.  Ratification Agreement at section 6.9.

k.    Covenants:  The Ratification Agreement contains affirmative, negative and financial reporting covenants customary for facilities of this nature. Ratification Agreement at sections 5 and 6.5 through 6.8.

l.    Events of Default:  The Ratification Agreement contains certain events of default.  By way of example, and as more fully set forth in section 6.10 of the Ratification Agreement, appointment of a trustee in the Debtors' cases, dismissal of the Debtors' cases, occurrence of a material adverse event, or failure to pay the DIP Obligations when due.

m.    Lender Fees:  None.

n.    Debtors' Stipulations, Waivers and Releases:  The Debtors propose to stipulate to the amount, validity and priority of the prepetition claims of the First Lien Secured Parties.  The Debtors also seek to waive certain rights and

causes of action and grant global releases in favor of the First Lien Secured Parties as to any and all prepetition claims, including the Debtors' rights under section 506(c) of the Bankruptcy Code, pending entry of the Final Order. Interim Order at Recital E, Ratification Agreement at section 8. The Debtors' stipulations and waivers are subject to challenge by any party in interest or, if a committee is appointed, by such committee, filed within the earlier of (a) confirmation of a plan of reorganization; (b) sixty (60) days following the entry of the Final Order, (c) solely if a committee is not appointed, seventy-five (75) days following entry of the Final Order, (d) such later date consented to in writing by the First Lien Agent, or (e) such longer period as the Court orders for cause shown prior to the expiration of such period. Interim Order at ¶8-9.

o.    Waiver or Modification of the Automatic Stay: Subject to seven (7) business days prior notice, the automatic stay will be vacated in the event of default under the Ratification Agreement to permit the exercise of remedies by the First Lien Secured Parties. Interim Order at ¶16.

p.    Amount of Cash Collateral to Be Used. The Debtors seek to use Cash Collateral in an amount consistent with the expenditures described in the Budget.

q.    Parties with an Interest in Cash Collateral. The parties with an interest in the Cash Collateral are: (i) the First Lien Agent, for the benefit of the First Lien Lenders,[3] and (ii) Fifth Street Mezzanine Partners III, L.P. (the "**Second Lien Agent**"), the lenders party thereto (together with their permitted successors and assigns in such capacity, the "**Second Lien Lenders**").[4]

r.    Use of Cash Collateral. The First Lien Agent, on behalf of the First Lien Lenders, has consented to the Debtors' use of Cash Collateral, wherever such Cash Collateral may be located, in accordance with the terms of the Interim Order and the Budget. Ratification Agreement at section 9.

s.    Termination Date. The Debtors' ability to use Cash Collateral shall end on the Commitment Termination Date.

t.    Adequate Protection to First Lien Lenders. The Debtors have agreed to provide adequate protection to the First Lien Lenders pursuant to

---

[3] The First Lien Lenders are affiliates of the First Lien Agent, GOF II NON RE LO LLC, GOF II NON RE LO Series B LLC, GOF Class A and B LLC, GOF Class C LLC, Fairchild Offshore Master Fund L.P., and Fairchild Offshore Master Fund II L.P.

[4] The Debtors believe that the value of the Debtors' property that is secured by the lien of the First Lien Agent is less than the amount of the aggregate obligations owed to the First Lien Lenders and, accordingly, the Second Lien Lenders have only an unsecured claim against the Debtors' estates. The Debtors propose, however, to provide the same adequate protection to the Second Lien Lenders that is being provided to the First Lien Lenders on account of their respective prepetition obligations, junior in all respects to the rights, protections and claims of the First Lien Lenders, including the DIP Obligations, and without prejudice to the Debtors' rights to seek to modify such adequate protection granted to the Second Lien Lenders.

6

sections 361, 363(e) and 364(d) of the Bankruptcy Code, to the extent of any diminution of the value of the interests of the First Lien Secured Parties in their prepetition collateral, in the form of additional and replacement security interests and liens in all of the assets of the Debtors and their estates, subject to the Carve-Out and excluding Avoidance Actions and the proceeds thereof, and junior only to the DIP Obligations and any prior permitted liens. In addition, the First Lien Secured Parties will have superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code for any such diminution in value, subject to the Carve-Out and excluding Avoidance Actions and the proceeds thereof, and junior only to the DIP Obligations. Subject to entry of the Final Order, the First Lien Agent (on behalf of the First Lien Lenders) shall have the right to "credit bid" the allowed amount of the DIP Obligations and the Pre-Petition First Lien Obligations (as defined in the Interim Order) during any sale of all or substantially all of its prepetition or postpetition collateral. Interim Order at ¶5.

u.  <u>Adequate Protection to Second Lien Lenders</u>. The Debtors are prepared to provide adequate protection to the Second Lien Lenders[5] pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, to the extent of any diminution of the value of the interests of the Second Lien Lenders in their prepetition collateral, in the form of additional and replacement security interests and liens in all of the assets of the Debtors and their estates, subject to the Carve-Out and excluding Avoidance Actions and the proceeds thereof, and junior only to the DIP Obligations, the replacement liens of the First Lien Secured Parties and any prior permitted liens. Interim Order at ¶6.

v.  <u>Automatic Perfection</u>. The liens, security interests and adequate protection provided in the Ratification Agreement, the Interim Order and the Final Order shall be valid, binding, enforceable, non-avoidable and automatically perfected without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which otherwise may be required under the laws of any jurisdiction to validate or perfect such security interests and liens. Interim Order at ¶7.

## DISCLOSURES

4.  Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, a debtor in

possession seeking authority to use cash collateral or obtain financing must disclose the presence

---

[5] Although the Debtors do not believe that the Second Lien Lenders are entitled to adequate protection on account of the Debtor's use of Cash Collateral, and reserve all rights with respect to the provision of adequate protection to the Second Lien Lenders, the Debtors are prepared to offer the Second Lien Lenders the precise relief specified in the Intercreditor Agreement (as defined below), that is sufficient to fulfill the Second Lien Lenders' agreement not to object to any use of cash collateral on the grounds of a failure to provide adequate protection to the Second Lien Lenders. *See* Intercreditor Agreement § 4.5(a).

and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing. The debtor in possession must also justify the inclusion of such provisions.

Set forth below are the disclosures required in accordance with such rules:

a. Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing. **The proposed Interim Order does not provide for the granting of cross-collateralization protection to any prepetition secured creditors, other than replacement liens with the same validity and priority as the lenders' prepetition security interests.**

b. Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or (ii) the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the Committee at least sixty (60) days from the date of its formation to investigate such matters. **The proposed Interim Order, at Recital E, includes certain stipulations by the Debtors relating to the validity, perfection, enforceability and amount of the First Lien Secured Parties' prepetition liens and claims. Further, the Ratification Agreement, at section 8, contains global releases of prepetition claims by the Debtors in favor of the First Lien Secured Parties. The foregoing stipulations, waivers and releases are subject to challenge by any party in interest or, if a committee is appointed, by such committee as set forth in the Interim Order at ¶¶8-9.**

c. Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code. **The proposed Interim Order does not provide for a waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code. Such provision is contemplated by the Final Order.**

d. Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. **The proposed Interim Order does not contain any provisions that grant liens on Avoidance Actions or the proceeds thereof.**

e. Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **The proposed Interim Order does not contain provisions that deem prepetition**

8

secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **Although the Ratification Agreement is an extension of the prepetition First Lien Credit Agreement, there is no roll-up of prepetition debt contemplated in connection therewith.**

        f.      Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. **The proposed Interim Order does not provide for disparate treatment for the professionals retained by a committee from those professionals retained by the Debtors, except that the Budget projects that fees and expenses of Committee professionals will be lower than fees and expenses of Debtor professionals.**

        g.      Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder. **The proposed Interim Order does not provide for the priming of any secured lien without the consent of that lienholder. The First Lien Lenders consent to the relief requested herein. As to the Second Lien Lenders, such consent is contained in the Intercreditor Agreement (as defined below).**

        h.      Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case. **The proposed Interim Order, at ¶¶5-6, describes the forms of adequate protection provided to the First Lien Secured Parties and the Second Lien Lenders.**

        i.      Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay. **The proposed Interim Order, at ¶16, describes the modification of the automatic stay in the event of default.**

        j.      Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate. **The proposed Interim Order, at ¶7, includes provisions that provide for the automatic perfection and validity of the liens, security interests and adequate protection provided in the Ratification Agreement and the Interim Order without the necessity of any further filing or recording under the laws of any jurisdiction.**

9

## BACKGROUND

5.    On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession. Concurrently herewith, the Debtors filed a motion seeking joint administration and consolidation of the Debtors' chapter 11 cases for procedural purposes only. No trustee or examiner has been appointed in these chapter 11 cases.

6.    As set forth more fully in the First Day Declaration, the Debtors, founded in 2005, are a provider of semi-trailer rentals, specializing in road-ready semi-vans and flatbeds for the mid-market segment of the transportation industry. Premier is a wholly-owned subsidiary of Holdings. Neither Debtor has any other subsidiaries. The Debtors provide their customers with a myriad of services, including short-term trailer rentals, operating leases, leases with purchase options, used semi-trailers for purchase, sale and lease-backs and maintenance services. Headquartered in Grapevine, Texas, the Debtors, through their operating company Premier, operate their business out of nineteen branches in fifteen different states in the United States. Premier's nineteen corporate employees are located at the Debtors' main offices in Grapevine, Texas and King of Prussia, Pennsylvania. The remainder of its employees, approximately forty-eight, are located throughout Premier's branch offices.

7.    On the Petition Date, the Debtors filed the *Prepackaged Joint Chapter 11 Plan of Reorganization of PTL Holdings LLC, et al. Under Chapter 11 of the Bankruptcy Code* (the "**Plan**"). The primary purpose of the Plan is to effectuate the restructuring and substantial de-leveraging of the Debtors' capital structure in order to bring it into alignment with the

10

Debtors' present and future operating prospects and to provide the Debtors with greater liquidity. The Plan will allow the Debtors to continue their businesses in the ordinary course and gives the First Lien Lenders, at their election, either (a) a payment from reorganized Premier's exit financing facility in an amount to be determined such that reorganized Premier, after the payment is made, will have availability of $20 million under such exit facility (the "**First Lien Credit Agreement Lenders' Cash Payment**"), or, alternatively, (b) issuance by reorganized Premier of a note in the amount equal to the First Lien Credit Agreement Lenders' Cash Payment, or such lesser amount as may be agreed to by the First Lien Lenders, secured by liens on all the assets of reorganized Premier, junior only to the liens under the exit financing facility. The First Lien Credit Agreement Lenders' Cash Payment is in exchange for the cancellation of the First Lien Credit Agreement and the discharge of obligations owed thereunder. Holders of the Second Lien Credit Agreement (as defined below) and general unsecured claims against the Debtors will not receive any distributions under the Plan. The existing membership interests in Holdings will be cancelled and such holders will not receive any distributions on account of such interests.

8.      In connection with developing the Plan, the Debtors reviewed their current business operations and compared their prospects as an ongoing business enterprise with the estimated recoveries in various liquidation scenarios. As a result, the Debtors concluded that the Debtors' enterprise value would be maximized by continuing to operate as a going concern. The Debtors believed that their businesses and assets have value that would not be realized in a liquidation, either in whole or in substantial part. Consistent with the liquidation analysis described in the disclosure statement which accompanies the Plan, the value of the Debtors'

11

assets would be greater if the Debtors operate as a going concern instead of liquidating. Moreover, the Debtors believe that any alternative to confirmation of the Plan, such as an out-of-court restructuring, liquidation, or attempts by another party in interest to file a plan of reorganization, would result in significant delays, litigation, and additional costs, and ultimately would lower the Debtors' value.

9.      Prior to the commencement of these cases, the Debtors solicited acceptances of the Plan from the holders of claims against Premier under the First Lien Credit Agreement which make up the claims in Class 3(B) under the Plan. Class 3(B) voted to accept the Plan. No other classes of claims are entitled to vote under the Plan. The vote from Class 3(B) constitutes 100% acceptance of the Plan by those classes of claims eligible to vote on the Plan.

10.      On the date hereof, the Debtors commenced these cases in their continuing effort to reorganize and proceed to confirmation of the Plan.

## PREPETITION CAPITAL STRUCTURE

11.      As of the Petition Date, the Debtors had approximately $110 million of outstanding indebtedness on a consolidated basis, consisting of (a) approximately $83 million under a senior secured, revolving credit facility (the "**First Lien Facility**"), and (b) approximately $27 million under a second lien term loan (the "**Second Lien Facility**"). The following summarizes the Debtors' primary long-term debt obligations in order of priority.

12

12.    On June 3, 2005, the Debtors and the First Lien Lenders[6] entered into that certain *Loan and Security Agreement* (the "**First Lien Credit Agreement**"),[7] pursuant to which the lenders provided the Debtors with an asset-based, revolving credit loan to help finance the Debtors' trailer fleet and provide for ongoing working capital needs. The First Lien Facility presently matures on August 31, 2011.[8] True and correct copies of the First Lien Credit Agreement (without amendments) is attached hereto as **Exhibit D**.

13.    As of the Petition Date, the total amount outstanding under the First Lien Facility was not less than $83,377,855.05.

14.    The Debtors' obligations under the First Lien Credit Agreement are secured by a first priority lien granted to the Prepetition Administrative Agent for the benefit of the Prepetition Senior Secured Lender on all of the Debtors' "**Collateral**," as defined in the First Lien Credit Agreement to include, among other assets and property, all of the Debtors' Accounts, Inventory, Goods, Equipment, Deposit Accounts, General Intangibles, money, cash and cash equivalents and contract rights and rights under leases of real and personal property whether as lessor or lessee (including any option to purchase thereunder), including any and all proceeds of the foregoing (all as defined in the First Lien Credit Agreement).

---

[6] The original First Lien Lenders were Bank of America, N.A., The CIT Group/Business Credit, Inc., and Textron Financial Corporation.

[7] Holdings guaranteed the obligations of Premier as the borrower under the First Lien Credit Agreement. Holdings' obligations as guarantor are also secured by a lien on any collateral owned by Holdings, as well as a pledge of the common and preferred stock issued by Premier and held by Holdings.

[8] The original maturity date of the First Lien Facility was June 3, 2011, but has been extended by certain amendments to the First Lien Facility.

13

15. On October 23, 2007, the Debtors and the Second Lien Lenders entered into that certain *Credit Agreement* (the "**Second Lien Credit Agreement**",[9] pursuant to which the Second Lien Lenders provided the Debtors with a $17.5 million secured term loan for general corporate purposes. The Second Lien Facility matures on October 23, 2012.

16. As of July 31, 2011, the Debtors owed approximately $27 million under the Second Lien Facility.

17. The Debtors' obligations under the Second Lien Credit Agreement are secured by liens on the same Collateral securing the obligations under the First Lien Credit Agreement. The Second Lien Agent has a lien on the Collateral under the Second Lien Facility that is junior and subordinated to the liens of the First Lien Agent under the First Lien Facility pursuant to that certain *Intercreditor Agreement* dated as of October 23, 2007 (as amended, the "**Intercreditor Agreement**"). A true and correct copy of the Intercreditor Agreement is attached hereto as **Exhibit E**.

## NEED FOR FINANCING

18. As more fully set forth in the First Day Declaration, the Debtors have an urgent and immediate need for the borrowings in the principal amount of up to $1,500,000 contemplated under the Ratification Agreement and the use of Cash Collateral. In order for the Debtors to continue to operate as a going concern during the Chapter 11 Cases, the Debtors must have ample liquidity to meet the needs, demands and obligations of and to their lessees, lessors, customers, suppliers, employees and taxing authorities.

---

[9] As with the First Lien Credit Agreement, Holdings guaranteed the obligations of Premier as the borrower under the Second Lien Credit Agreement.

19.     Without the proposed postpetition financing and continued use of the cash derived from customer payments, the Debtors will not have any liquidity to operate their business, and therefore will be unable to fund their ordinary course expenditures or pay the expenses necessary to administer the chapter 11 cases. Simply put, without access to financing and continued use of Cash Collateral, the Debtors will be required to cease operations and liquidate, causing irreparable harm to the Debtors, their estates and their creditors. Accordingly, the Debtors have an urgent and immediate need for the borrowings under the Ratification Agreement and continued use of Cash Collateral contemplated herein.

20.     For the above reasons, the Debtors have determined, in the exercise of their sound business judgment, that they require postpetition financing and use of Cash Collateral to, among other things, continue business operations and the payments and expenses attendant thereto, and the costs and expenses of administering these chapter 11 cases. As such, the Debtors hereby request authority to incur credit in accordance with the Ratification Agreement and to use Cash Collateral in compliance with the proposed Interim Order and the Budget. The Debtors believe the adequate protection provided for in the Interim Order protects the prepetition lenders' interests in the Collateral. The First Lien Lenders are willing to extend financing in accordance with the terms of the Ratification Agreement and, as part of such agreement and in accordance with the Interim Order and the Budget, the First Lien Secured Parties have consented to the Debtors' use of Cash Collateral. Further, the adequate protection being offered by the Debtors to the Second Lien Lenders is fully consistent with the provisions of the Intercreditor Agreement under which the Second Lien Lenders have agreed not to object to bankruptcy

15

financing or the use of Cash Collateral with the consent of the First Lien Agent. *See*

Intercreditor Agreement at section 4.5(a).

**BASIS FOR RELIEF**

A.     **Approval Under Section 364(c) of the Bankruptcy Code**

19.     Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the

exercise of its business judgment, incur secured debt if the debtor has been unable to obtain

unsecured credit and the borrowing is in the best interests of the estates. *See, e.g., In re Simasko*

*Production Co.*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing stipulation

where debtor's best business judgment indicated financing was necessary and reasonable for

benefit of estates); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with

respect to postpetition credit, courts "permit debtors in possession to exercise their basic business

judgment consistent with their fiduciary duties.").

20.     Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

> If the trustee is unable to obtain unsecured credit allowable under
> section 503(b)(l) of this title as an administrative expense, the
> court, after notice and a hearing, may authorize the obtaining of
> credit or the incurring of debt –
>
> (1)     with priority over any or all administrative expenses
> of the kind specified in section 503(b) or 507(b) of this title;
>
> (2)     secured by a lien on property of the estates that is
> not otherwise subject to a lien; or
>
> (3)     secured by a junior lien on property of the estates
> that is subject to a lien.

11 U.S.C. § 364(c).

21.     In satisfying the standards of section 364(c) of the Bankruptcy Code, a

debtor need not seek credit from every available source, but should make a reasonable effort to

16

seek other sources of credit available of the type set forth in sections 364(a) and (b) of the

Bankruptcy Code. *See, e.g., Bray v. Shenandoah Federal Sav. & Loan Ass'n (In re Snowshoe

Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee had demonstrated by good-faith effort that

credit was not available without senior lien by unsuccessfully contacting other financial

institutions in immediate geographic area; "the statute imposes no duty to seek credit from every

possible lender before concluding that such credit is unavailable"); *Ames Dept. Stores*, 115 B.R.

at 40 (finding that debtor demonstrated the unavailability of unsecured financing where debtor

approached several lending institutions).

        22.     Instead, the debtor's efforts are to be considered on a case by case basis,

particularly "[g]iven the 'time is of the essence' nature of this type of financing." *In re Reading

Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). In *In re Sky Valley, Inc.*, 100 B.R. 107,

112-13 (Bankr. N.D. Ga. 1988), the Court stated that "it would be unrealistic and unnecessary to

require Debtors to conduct such an exhaustive search for financing" where the business suffered

from financial stress, had little or no unencumbered property, and the primary property was

subject to numerous liens, and thus the Debtors' approach of only four lenders was sufficient

under such circumstances. *See also In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981)

(section 364(d)(1)(A) satisfied where two banks refused to provide unsecured credit to debtor);

*see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D. N.Y. 1992) (element

satisfied where "specialist in commercial lending practices … explained that most banks lend

money only in return for a senior secured position. The debtor cannot obtain financing secured

by a lien on unencumbered property … because there is no property in the estate which is not

already subject to a lien.").

17

23.     The Debtors satisfy the requirements of section 364(c) of the Bankruptcy Code because the Debtors are unable to obtain credit otherwise, relevant secured creditors are adequately protected, and the proposed financing is in the best interests of the estates.

24.     The Debtors believe that any reorganization of their business is not possible without access to sufficient working capital and liquidity through the incurrence of postpetition financing under the Ratification Agreement and the use of Cash Collateral. The use of Cash Collateral alone may be insufficient to meet the Debtors' postpetition liquidity needs. The Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of the Debtors' estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the First Lien Lenders on terms more favorable than the terms of the Ratification Agreement. The only source of secured credit available to the Debtors, other than the use of Cash Collateral, is the Ratification Agreement.

25.     The Debtors believe that their efforts to obtain credit except as provided under the Ratification Agreement have been impacted by the fact that all or substantially all of the Debtors' assets are encumbered. Prior to the commencement of these chapter 11 cases, the Debtors solicited potential debtor in possession financing from several sources. No one expressed any interest in providing financing given the existing lenders' outstanding obligations and "blanket" liens and the contemplated restructuring under the Plan. Further, based on the modest size of the proposed financing (up to $1,500,000) and the low interest rate (currently,

18

5.75% per annum) made available to the Debtors by the First Lien Lenders, no alternative financing proposals have been obtained.

26.     After considering all of their alternatives, the Debtors have concluded, in the exercise of their business judgment, that the financing to be provided by the First Lien Lenders pursuant to the terms of the Ratification Agreement represents the best financing presently available to the Debtors. Moreover, the Debtors and their advisors have further concluded, in the exercise of their business judgment, that the loan terms and pricing provided under the Ratification Agreement are even more affordable to the Debtors than the range of comparable financing arrangements recently effectuated in other chapter 11 cases.

**B.     Approval Under Section 364(d) of the Bankruptcy Code**

27.     When a debtor is not able to obtain financing pursuant to the provisions of section 364(c) of the Bankruptcy Code, the debtor may obtain such financing that is secured by a "priming lien" that is senior or equal to existing liens against property of the estate. 11 U.S.C. § 364(d). Section 364(d)(1) of the Bankruptcy Code governs financing that is secured by a priming lien and provides that a court may authorize a debtor to obtain such debt provided that (i) the debtor is not able to obtain credit otherwise and (ii) the lien being primed is adequately protected.

28.     In the context of section 364(d), collateral only requires adequate protection to the extent that a priming lien will result in a decrease in the value of such entity's interest in the subject property. *See In re 495 Central Park Ave. Corp.*, 136 B.R. at 631 ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization."); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865

DOCS_SF:77448.3 70938-001

(Bankr. W.D. Pa. 2003) (quoting *In re Sharon Steel Corp.*, 159 B.R. 165 (Bankr. W.D. Pa. 1993) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996) (citing *In re 495 Central Park Ave. Corp.*). What constitutes adequate protection is decided on a case-by-case basis. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("the determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case"); *In re Realty Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992); *In re Becker Indus. Corp.*, 58 B.R. 725, 236 (Bankr. S.D.N.Y. 1986).

21.     The Debtors satisfy the standard under section 364(d) of the Bankruptcy Code. Here, the First Lien Secured Parties consent to the priming contemplated under the Ratification Agreement, which itself is an extension of credit under the existing First Lien Credit Agreement. Likewise, pursuant to section 4.5(a) of the Intercreditor Agreement, the Second Lien Lenders are deemed to consent to the financing provided by the First Lien Secured Parties.

22.     It also bears mention that no adequate protection is needed as to the Second Lien Lenders given that the value of the collateral in which the Second Lien Lenders have a junior lien is insufficient to satisfy the senior First Lien Lenders in full. In other words, the Second Lien Lenders are "out of the money" and, hence, not entitled to adequate protection. The law is "well settled that valueless junior secured positions are not entitled to adequate protection." *In re Dunckle Assocs., Inc.*, 19 B.R. 481, 485 n.10 (Bankr. E.D. Pa. 1982) (finding that adequate protection is not required for subordinated junior lien holders where there is no value in the collateral for junior lien holders); *see also In re Levitt & Sons, LLC*, 384 B.R. 630, 641-42 (Bankr. S.D. Fla. 2008) (concluding that junior lien holders are not entitled to adequate

20

protection where the junior lien holder would receive nothing had there not been post-petition superpriority financing).

23.    Although the Debtors do not believe that the Second Lien Lenders are entitled to adequate protection, the Debtors are prepared to offer adequate protection in the form of replacement liens solely to the extent of the diminution in value of the Second Lien Lenders' liens in the collateral from and after the Petition Date, subject to the Carve-Out and excluding Avoidance Actions and the proceeds thereof, and subordinate to the liens of the First Lien Secured Parties and any other prior permitted liens. Such protections for the interests of the Second Lien Lenders are more than sufficient under the circumstances and are also fully consistent with the terms of the Intercreditor Agreement under which the Second Lien Lenders have consented to postpetition financing and the use of Cash Collateral arranged by the First Lien Agent.

29.    In light of the foregoing, the Ratification Agreement is vital to maximizing the value of the Debtors' estates and should be approved by the Court.

## C.    Use of Cash Collateral

30.    The Debtors' use of property of the estates is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estates, in the ordinary course of business, without notice or hearing, and may use property of the estates in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1).

31.     The Bankruptcy Code establishes a special requirement, however, regarding the debtor in possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estates and an entity other than the estates have an interest . . .." 11 U.S.C. § 363(a).  Section 363(c)(2) of the Bankruptcy Code permits the debtor in possession to use, sell or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exist:

> (A) each entity that has an interest in such cash collateral consents;
> or (B) the court, after notice and a hearing, authorizes such use,
> sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

32.     Here, as noted above, the First Lien Secured Parties consent to the use of Cash Collateral, as do the Second Lien Lenders by virtue of the provisions of the Intercreditor Agreement.  Further, even though their interests are out of the money, the Second Lien Lenders are adequately protected by replacement liens in postpetition assets to the same extent and priority that existed as of the Petition Date.

## INTERIM ORDER AND FINAL HEARING

24.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the final hearing for parties to file objections to the Motion.

25.     The urgent need to preserve the Debtors' businesses, and avoid immediate and irreparable harm to the estates, makes it imperative that the Debtors be authorized to access postpetition financing and use the Cash Collateral, pending the Final Hearing, in order to

continue their operations and administer their Chapter 11 Cases. Without the ability to borrow funds under the Ratification Agreement and use Cash Collateral, the Debtors would be unable to meet their postpetition obligations and would be unable to fund their working capital needs, thus causing irreparable harm to the value of the Debtors' estates and ending the Debtors' reorganization efforts. Accordingly, the Debtors respectfully request that, pending the hearing on a Final Order, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

## NOTICE OF MOTION

26.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee; (b) the First Lien Agent and counsel thereto; (c) the Second Lien Agent and counsel thereto; (d) all known parties asserting a lien against the Debtors' assets; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the Debtors' twenty largest unsecured creditors. Because of the nature of the relief requested, the Debtors respectfully submit that no other or further notice of the relief requested in this Motion need be given.

## NOTICE WITH RESPECT TO FINAL HEARING

27.     No trustee, examiner or statutory committee has been appointed in the Debtors' cases. Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to provide notice of the Final Hearing by serving a copy of this Motion, together with the Interim Order, by hand or overnight mail or courier service (or for those set up to receive

electronic transmissions, by electronic transmission), upon (a) the Office of the United States Trustee; (b) the First Lien Agent and counsel thereto; (c) the Second Lien Agent and counsel thereto; (d) all known parties asserting a lien against the Debtors' assets; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Debtors' twenty largest unsecured creditors; and (h) all parties that have filed notices of appearance and requests for notices in the Chapter 11 Cases. The Debtors respectfully request that such notice is sufficient and request that this Court find that no further notice of the Final Hearing and Final Order is required.

## NO PRIOR REQUEST

28. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, based upon the foregoing, the Debtors request entry of the Interim Order and the Final Order under sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2: (i) authorizing the Debtors to (a) enter into and incur credit under the Ratification Agreement, (b) use Cash Collateral, and (c) provide adequate protection to the First Lien Secured Parties and the Second Lien Lenders in accordance with the provisions hereof, and (ii) scheduling the Final Hearing Date.

Dated: August 23, 2011        PACHULSKI STANG ZIEHL & JONES LLP

By: _Laura Davis Jones_

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Curtis A. Hehn (DE Bar No. 4264)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:    ljones@pszyjw.com
           dbertenthal@pszjlaw.com
           jfried@pszjlaw.com
           chehn@pszjlaw.com

*Proposed Counsel for the Debtors and Debtors in Possession*

DOCS_SF:77448.3 70938-001