# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PTL Holdings LLC, *et al.*,[1] | ) | Case No. 11-12676 (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## PREPACKAGED JOINT PLAN OF REORGANIZATION OF PTL HOLDINGS LLC, ET AL., UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### Dated: August 22, 2011

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:    ljones@pszyjw.com
           dbertenthal@pszjlaw.com
           jfried@pszjlaw.com

[Proposed] Counsel for Debtor and Debtor in Possession
PTL Holdings LLC

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: PTL Holdings LLC (6723) and Premier Trailer Leasing, Inc. (3906). The Debtors' address is 3600 William D. Tate Avenue, Suite 300, Grapevine, Texas 76051.

**NO CHAPTER 11 CASE HAS BEEN COMMENCED AT THIS TIME. THE SOLICITATION MATERIALS ACCOMPANYING THIS PLAN OF REORGANIZATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1125(a).  FOLLOWING THE COMMENCEMENT OF THEIR CHAPTER 11 CASES, THE DEBTORS EXPECT TO PROMPTLY SEEK AN ORDER OF THE BANKRUPTCY COURT (I) APPROVING THEIR SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH BANKRUPTCY CODE SECTION 1126(b) AND (II) CONFIRMING THIS PLAN OR OF REORGANIZATION PURSUANT TO BANKRUPTCY CODE SECTION 1129.**

# ARTICLE I

# INTRODUCTION

PTL Holdings, LLC and Premier Trailer Leasing, Inc., debtors and debtors in possession under chapter 11 of the Bankruptcy Code, hereby propose this prepackaged *Joint Plan of Reorganization of PTL Holdings, LLC., et al., Under Chapter 11 of the Bankruptcy Code*, dated as of the first date set forth above (the "Plan"). Any agreements and/or other documents that are referenced in this Plan, but which are not attached as exhibits to this Plan, are available upon written request to counsel for the Debtors indicated on the first page of this Plan.

# ARTICLE II

# DEFINITIONS

## A.    Defined Terms

Terms herein with an initial capital not required by standard capitalization rules are defined terms, and each such term shall have the meaning assigned to it below.

1.      "*ABL Facility*" means the asset based lending facility by and between Reorganized Premier and such exit lender acceptable to the Debtors and the Prepetition Agent (including any agreements, amendments, supplements or documents, related thereto.

2.      "*ABL Lenders*" means the lender or lenders under the ABL Facility.

3.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under Section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date; (b) compensation for legal, financial advisory, accounting and

other services and reimbursement of expenses awarded or allowed under Section 330(a) or 331

of the Bankruptcy Code; (c) all fees and charges assessed against the Estate under 28 U.S.C.

§§ 1911-1930; (d) all obligations designated as Allowed Administrative Claims pursuant to an

order of the Bankruptcy Court; (e) any Tax Claims incurred by the Debtors after the Petition

Date or relating to a tax period which occurs after the Petition Date; and (f) any Cure Claims.

        4.     *"Agent"* means any shareholder, director, officer, employee, partner,

principal, member, manager, agent, attorney, accountant, advisor, investment banker, consultant,

Professional, or other representative of any Entity, including any current and former officer,

director, member or manager of any of the Debtors (solely in their respective capacities as such,

and not in any other capacity).

        5.     *"Allowed"* means, with respect to any Claim, except as otherwise

provided herein:  (a) a Claim that is set forth in a Filed Proof of Claim as to which no timely

objection has been Filed; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is

allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to

the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and

nature of Claim executed by Reorganized Premier on or after the Effective Date; (iii) in

accordance with the applicable Debtor's books and records; (d) a Claim relating to a rejected

executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been

allowed by a Final Order, in either case only if a Proof of Claim has been timely Filed by the

Claimant before the applicable bar date for such claim or has otherwise been deemed timely

Filed under applicable law; or (e) a Claim that is Allowed pursuant to the terms of this Plan.

4

6.      *"Allowed Claim"* means a Claim of the type described that has been Allowed.

7.      *"Assets"* means all of the right, title and interest of the Debtors in, to and under any and all assets and property, whether tangible, intangible, real or personal, that constitute property of the Debtors' Estates within the meaning of section 541 of the Bankruptcy Code.

8.      *"Assumed Contracts"* means all executory contracts and unexpired leases assumed by the applicable Debtor under section 365 of the Bankruptcy Code.

9.      *"Avoidance Actions"* means any and all claims and causes of action which any of the Debtors has asserted or may assert under sections 502, 544, 545, 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

10.     *"Ballot"* means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

11.     *"Bankruptcy Code"* means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as now in effect or as it may be amended from time to time.

DOCS_SF:77215.17 70938-001

12.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware, or any other court of competent jurisdiction exercising jurisdiction over the Cases.

13.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as the same shall be applicable to these Cases.

14.    *"Business Day"* means a day other than Saturday, Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

15.    *"Cases"* means the chapter 11 bankruptcy cases commenced by the Debtors filing their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

16.    *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

17.    *"Causes of Action"* means any and all actions, causes of action controversies, damages, liabilities, liens, obligations, rights, suits or proceedings, damages, judgments, claims, demands and rights of contribution or indemnification whatsoever, whether known or unknown, reduced to judgment, disputed or undisputed, liquidated or unliquidated, secured or unsecured, existing or hereafter arising, in law, equity, or otherwise.

18.    *"Charter Documents"* means the articles or certificate of incorporation and the bylaws of a company, as applicable, and any amendments to the foregoing, and the certificate of formation, articles of organization and the limited liability company operating agreement of a company, as applicable, and any amendments to the foregoing.

6

19.     *"Claim"* shall have the meaning assigned to that term in section 101(5) of the Bankruptcy Code, including, but not limited to:  (a) any right to payment from any Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from any Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

20.     *"Claimant"* means the Holder of a Claim.

21.     *"Class"* means a category of Claims or Interests as specified in Article III of this Plan.

22.     *"Confirmation"* means the entry by the Bankruptcy Court of the Confirmation Order confirming this Plan under the provisions of section 1129 of the Bankruptcy Code upon the satisfaction of the conditions to confirmation of the Plan set forth in Article XV of the Plan.

23.     *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

24.     *"Confirmation Hearing"* means the hearing to be held by the Bankruptcy Court (as such hearing may be adjourned or continued from time to time), at which the Bankruptcy Court will consider Confirmation of this Plan.

25.     *"Confirmation Order"* means an order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

7

26.    *"Creditor"* means any Holder of a Claim against the Debtors that arose prior to the Petition Date.

27.    *"Cure Claim"* means any Claim against any Debtor based upon the Debtors' defaults under an Executory Contract at the time the contract or lease is assumed by any Debtor under sections 365 and 1123 of the Bankruptcy Code.

28.    *"Cure Payment Schedule"* means the document that shall be filed with the Bankruptcy Court and served upon Persons entitled to notice pursuant to Bankruptcy Rule 2002, which indicates the amounts proposed by the Debtors to satisfy Cure Claims.

29.    *"Debt"* means any liability on a Claim.

30.    *"Debtor(s)"* means the Debtor(s), individually or collectively: PTL Holdings LLC or Premier Trailer Leasing, Inc.

31.    *"Disallowed"* means, with respect to a Claim, Interest, or Administrative Expense, all or a portion thereof that it is determined is not allowed under the Bankruptcy Code either by a Final Order, the Plan, or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

32.    *"Disbursing Agent"* means Reorganized Premier, or such other entity designated by the Debtors to make the distributions to holders of Allowed Claims provided under this Plan.

33.    *"Disclosure Statement"* means that certain *Disclosure Statement for Solicitation of Acceptances of Prepackaged Joint Plan of Reorganization*, dated as of August 22, 2011, and any exhibits annexed thereto and any documents delivered in connection therewith, as

8

the same may be amended, modified or supplemented from time to time by any duly authorized amendment, modification or supplement, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and other applicable law.

34.    *"Disputed Claim"* means:  (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the deadline fixed under the Plan as provided in Article IX.B or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a Proof of Claim is required to be filed and no such Proof of Claim is filed or, if filed, is filed after any applicable bar date for such Claim; (iii) any contingent or unliquidated Claim; and (iv) a Claim that is designated as a Disputed Claim pursuant to the terms of this Plan.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection and shall be deemed Allowed as to the portion for which no objection is made.

35.    *"Distribution Date"* means the first Business Day after the Effective Date, or as soon thereafter as practicable.

36.    *"Effective Date"* means, if no stay of the Confirmation Order is in effect, the first Business Day after the date all of the conditions precedent required to consummate the transactions contemplated by Article XV of this Plan have been satisfied or waived, or such earlier or later date as may reasonably be determined by the Debtors and the Prepetition Agent.

37.    *"Entity"* means any entity as defined in section 101(15) of the Bankruptcy Code.

38.    "*Equity Grant*" means common stock of Reorganized Premier in the amount of 7.5% of the common stock of Reorganized Premier which shall vest ratably over a period of 3 years from the Effective Date, to be granted to the proposed senior managers of Reorganized Premier by and in accordance with the terms and provisions of the documents relating to Reorganized Premier to be filed with the Plan Supplement.

39.    "*Estate(s)*" means the Debtors' estate(s) created under section 541 of the Bankruptcy Code in the Cases.

40.    "*Executory Contract*" means any executory contract or unexpired lease, subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person or Persons, but specifically excluding all of the contracts and agreements entered into after the Petition Date and/or pursuant to this Plan.

41.    "*Existing Equity Interests*" means all Interests in Premier as of immediately prior to the Effective Date.

42.    "*Existing Equity and Membership Interests*" means, collectively, all Existing Equity Interests and all Existing Membership Interests.

43.    "*Existing Membership Interests*" means, collectively, all membership Interests in Holdings as of immediately prior to the Effective Date.

44.    "*Final Order*" means an order or judgment entered by the Bankruptcy Court that (a) has not been reversed, vacated, stayed, modified or amended, (b) is not the subject of a timely filed pending appeal or motion for review or reconsideration, (c) has not been and may no longer be appealed from or otherwise reviewed or reconsidered, other than under

10

Bankruptcy Rule 9024 and/or Federal Rule of Civil Procedure 60, and (d) is final and non-

appealable in accordance with Bankruptcy Rule 8002 or any other applicable law or rule.

45.    *"First Lien Credit Agreement"* means that certain *Senior Secured Loan*

*and Security Agreement*, by and between Premier, as borrower; Holdings as guarantor; the First

Lien Credit Agreement Lenders, as lenders; and Garrison Loan Agency Services LLC, as

successor to Bank of America, as administrative agent, dated June 3, 2005, as amended.

46.    *"First Lien Credit Agreement Claim"* means any and all Claims arising

under or relating to the First Lien Credit Agreement.

47.    *"First Lien Credit Agreement Lenders"* or *"Lenders"* means individually a

"Lender" and collectively, "Lenders," including their respective successors and assigns, as

defined in the First Lien Credit Agreement.

48.    *"First Lien Credit Agreement Lenders' Cash Payment"* means a Cash

payment to be made, pro rata, to the Holders of the First Lien Credit Agreement Claims on the

Effective Date from borrowings under the ABL Facility in an amount such that Reorganized

Premier will have availability of $20 million under the ABL Facility for Reorganized Premier's

post-Effective Date operating expenses after such distribution is made.

49.    *"First Lien Credit Agreement Lenders' Payment"* means, at the election of

the First Lien Credit Agreement Lenders, either (i) payment of the First Lien Credit Agreement

Lenders' Cash Payment, or, alternatively (ii) issuance by Reorganized Premier of a note in an

amount equal to the First Lien Credit Agreement Lenders' Cash Payment or such other lower

amount agreed to by the First Lien Credit Agreement Lenders which note shall have a six month

11

maturity, accrue interest at the rate of 6% payable on maturity, be prepayable by Reorganized

Premier, and be secured by Liens on all of the assets of Reorganized Premier junior only to the

Liens of the ABL Lenders.

      50.     *"General Unsecured Claims"* means any unsecured Claim against any of

the Debtors, including, *inter alia*, any Rejection Claim, that is not an Administrative Claim,

Priority Claim, Priority Non-Tax Claim or Intercompany Claim.

      51.     *"Governmental Unit"* means the United States and any state,

commonwealth, district, territory, municipality, department, agency, or instrumentality of the

United States (but not a United States trustee while serving as a trustee in a case under this title),

or any foreign state.

      52.     *"Holdings"* means Debtor PTL Holdings LLC.

      53.     *"Holder"* means the beneficial holder of a Claim or Interest and, when

used in conjunction with a Class or type of Claim or Interest, means a beneficial holder of a

Claim or Interest in such Class or of such type.

      54.     *"Impaired"* means any Claim or Interest in an Impaired Class

      55.     *"Impaired Class"* means an impaired Class within the meaning of section

1124 of the Bankruptcy Code.

      56.     *"Intercreditor Agreement"* means that certain *Intercreditor Agreement*,

dated as of October 27, 2007, by and between the Second Lien Lender and Garrison Loan

Agency Services LLC, as successor to Bank of America, N.A., as administrative agent under the

First Lien Credit Agreement.

12

57.    *"Intercompany Claims"* means any Claim held by a Debtor against another Debtor.

58.    *"Interest(s)"* means any vested or unvested stock, membership or other equity ownership interest in one or more of the Debtors, whether or not transferable, of the type specified in section 101(16) of the Bankruptcy Code and all dividends and distributions with respect to such stock or interest and all rights, options, warrants, puts, calls, or other rights to acquire any stock or other equity ownership interest in any Debtor as of the Petition Date.

59.    *"Lien"* has the meaning assigned to that term in section 101(37) of the Bankruptcy Code.

60.    *"Management Options"* means options to purchase 7.5% of the common stock of Reorganized Premier to be granted by Reorganized Premier as soon as practicable after the Effective Date to the proposed senior managers of Reorganized Premier, dilutive of the other existing shareholders of Reorganized Premier, with a per share strike price based on Reorganized Premier's total equity value in an amount equal to $85,000,000 minus the First Lien Credit Agreement Lenders Cash Payment, in accordance with the terms and provisions of the documents relating to Reorganized Premier to be filed with the Plan Supplement.

61.    *"New Equity Interests"* means 100% of the equity interests in Reorganized Premier consisting of preferred and common stock to be issued to the First Lien Credit Agreement Lenders or their designees on the Effective Date which common stock shall be subject to dilution by the Management Options and the Equity Grant.

13

62.     "*Other Secured Claims*" means any Secured Claim that is not a First Lien
Credit Agreement Claim or a Second Lien Credit Agreement Claim.

63.     "*Person*" means an individual, a corporation, a partnership, a limited
liability company, an association, a joint stock company, a joint venture, an estate, a trust, or an
unincorporated organization.

64.     "*Petition Date*" means the date on which the Debtors file their voluntary
petitions for relief under chapter 11 of the Bankruptcy Code commencing the Cases.

65.     "*Plan*" means this prepackaged *Joint Plan of Reorganization of PTL
Holdings LLC, et al., Under Chapter 11 of the Bankruptcy Code*, dated as of the date on the
cover page hereof, filed and proposed by the Debtors, as the same may be amended, modified or
supplemented from time to time, including all exhibits and schedules hereto.

66.     "*Plan Supplement*" means that certain compilation of documents and
forms of documents, schedules and exhibits to be filed no later than seven days prior to the
Confirmation Hearing such other time as fixed by the Bankruptcy Court, in each case, as such
compilation may be amended, supplemented or modified from time to time in accordance with
the terms hereof and the Bankruptcy Code and Bankruptcy Rules.

67.     "*Prepetition Agent*" or "*Agent*" means Garrison Loan Agency Services
LLC Association, a national banking association, in its capacity as agent under the First Lien
Credit Agreement.

68.     "*Premier*" means Debtor Premier Trailer Leasing, Inc.

69.     "*Priority Claims*" means all Priority Non-Tax Claims and all Priority Tax Claims.

70.     "*Priority Non-Tax Claim*" means any Claim against any Debtor for an amount entitled to priority pursuant to section 507(a) of the Bankruptcy Code and that is not an Administrative Claim or a Priority Tax Claim.

71.     "*Priority Tax Claim*" means any Claim against any Debtor for an amount entitled to priority under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

72.     "*Professional*" means an Entity:  (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

73.     "*Professional Fee Claim*" means any Claim against any Debtor for compensation or reimbursement of expenses arising pursuant to sections 327, 328, 329, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Cases for services provided or expenses incurred on or after the Petition Date and the date immediately prior to the Effective Date.

74.     "*Rejected Contracts*" means those unexpired leases and executory contracts designated on the Plan Supplement to be rejected pursuant to section 365(a) of the Bankruptcy Code.

75.    "*Rejection Claim*" means any Claim against any Debtor for damages arising as a proximate result of the rejection of an Executory Contract under section 365 of the Bankruptcy Code.

76.    "*Reorganized Premier*" means Premier Trailer Leasing, Inc., as reorganized under the Plan.

77.    "*Reorganized Premier Board*" means the members of the board of directors of Reorganized Premier.

78.    "*Second Lien Credit Agreement*" means that certain *Credit Agreement*, as amended, dated as of October 23, 2007, by and between Premier, as borrower, Holdings as guarantor, and the Second Lien Lender.

79.    "*Second Lien Credit Agreement Claim*" means any and all Claims arising under or relating to the Second Lien Credit Agreement.

80.    "*Second Lien Lender*" means Fifth Street Mezzanine Partners, III, L.P.

81.    "*Secured Claim*" means any Claim against any Debtor which is secured by a valid, perfected and enforceable Lien on any Assets that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, to the extent of the value of such Assets, as determined in accordance with section 506(a) of the Bankruptcy Code, or (b) to the extent the Holder of such Claim has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

82.    "*Tax*" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

16

estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest,

penalty, or additions attributable to, imposed on or with respect to such assessments.

83.    "*Unclassified Claim*" means a Claim that is not classified under this Plan.

84.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a

Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy

Code.

85.    "*U.S. Trustee*" means the Office of the United States Trustee for Region 3.

86.    "*Voting Instructions*" means the instructions for voting on this Plan that

are contained in the Disclosure Statement and in the Ballots.

87.    "*Voting Deadline*" means 4:00 p.m. (prevailing Eastern Time) on August

23, 2011.

**B.    Undefined Terms**

Terms used herein but not defined above, or elsewhere in this Plan or in the

Disclosure Statement, shall have the meanings assigned to them, if any, in the Bankruptcy Code

and/or the Bankruptcy Rules.

**C.    Exhibits and Plan Supplement**

All exhibits to this Plan, as well as the Plan Supplement, are incorporated by

reference and made a part of this Plan as if set forth in full herein.  Holders of Claims and

Interests may obtain a copy of any filed exhibits and any Plan Supplement upon written request

to the Debtors.  Upon their filing, the exhibits and Plan Supplement may be inspected in the

office of the clerk of the Bankruptcy Court or its designee during normal business hours.  The

documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy

Court pursuant to the Confirmation Order.

**D.**    **Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein:  (a) whenever from

the context it is appropriate, each term, whether stated in the singular or the plural, will include

both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this

Plan to a contract, instrument, release, or other agreement or document being in a particular form

or on particular terms and conditions means that such document will be substantially in such

form or substantially on such terms and conditions; (c) any reference in this Plan to an existing

document, schedule or exhibit filed or to be filed means such document, schedule, or exhibit, as

it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any

reference to an entity as a Holder of a Claim or Interest includes such entity's successors, assigns

and participants; (e) all references in this Plan to Sections, Articles and Schedules are references

to Sections, Articles and Schedules of or to this Plan or the Plan Supplement, as the same may be

amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto,"

"hereunder" and other words of similar import refer to this Plan as a whole and not to any

particular section, subsection or clause contained in this Plan; (g) captions and headings to

Articles and Sections are inserted for convenience of reference only and are not intended to be a

part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract,

certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or

documents entered into in connection with this Plan, the rights and obligations arising under this

18

Plan shall be governed by, and construed and enforced in accordance with, federal law, including

the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed

by this Plan, the provision of Bankruptcy Rule 9006(a) will apply.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

### A.      Unclassified Claims

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims

and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or

receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the

Plan.  All such Claims are instead treated separately in accordance with this Article III and in

accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

### B.      Administrative Claims

Payment of Allowed Administrative Claims, excluding Professional Fee Claims,

shall be made by Reorganized Premier in the ordinary course of business when such claims

become due.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at

all appropriate times until the entry of a final decree or order converting or dismissing the Cases.

Creditors should not file with the Bankruptcy Court any requests for payment of any

Administrative Claims.

### C.      Priority Tax Claims

Each Allowed Priority Tax Claim shall, unless the holder of such Claim shall

have agreed to different treatment of such Claim, (i) be paid in full in Cash, without interest, by

19

Reorganized Premier, on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; or (d) such date as the holder of such Claim and Reorganized Premier may agree, or (ii) receive deferred cash payments to the extent permitted by section 1129(a)(9) of the Bankruptcy Code, with interest on the unpaid portion of such Claim at the statutory rate under applicable nonbankruptcy law or at a rate to be agreed upon by the Debtors, or Reorganized Premier and the appropriate governmental unit or, if they are unable to agree, to be determined by the Bankruptcy Court; *provided, however*, that Reorganized Premier may prepay any or all such Claims at any time, without premium or penalty. For the purpose of option (ii), the payment of each Allowed Priority Tax Claim shall be made in equal quarterly installments with the first installment due on the latest of: (i) the first Business Day following the end of the first full calendar quarter following the Effective Date, (ii) the first Business Day following the end of the first full calendar quarter following the date an order allowing such Claim becomes a Final Order, or (iii) such other time or times as may be agreed with the holder of such Claim. Each installment shall include simple interest on the unpaid balance of the Allowed Priority Tax Claim, without penalty of any kind, at the non-default rate of interest prescribed, agreed or determined under option (ii).

## D.    **Claims for Professional Fees**

Each Professional seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and

reimbursement of expenses incurred through the Effective Date on or before sixty (60) days from

the Effective Date; and (b) if the Bankruptcy Court grants such an award, each such Professional

will be paid in full in Cash by Reorganized Premier in such amounts as are allowed by the

Bankruptcy Court upon such allowance or as soon thereafter as practicable.  All final

applications for allowance and disbursement of Professional Fees must be in compliance with all

of the terms and provisions of any applicable order of the Bankruptcy Court, including the

Confirmation Order.  The fees and expenses of Professionals incurred on and after the Effective

Date shall be paid by Reorganized Premier without further notice or approval by the Bankruptcy

Court.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      **Summary**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative

Claims and Priority Tax Claims have not been classified and are excluded from the following

Classes.  Article III of the Plan describes the treatment of Administrative Claims and Priority

Tax Claims.

A Claim or Interest is placed in a particular Class only to the extent that the Claim

or Interest qualifies within the description of such Class and is in a different Class to the extent

that it qualifies within the description of such different Class, but the same portion of a Claim

may not be in more than one Class in relation to a particular Debtor.  A Claim or Interest is also

placed in a particular Class for all purposes, including voting, confirmation and distribution

21

under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a

Claim or Interest is placed in a particular Class for the purpose of receiving distributions

pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or

Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled

prior to the Effective Date.

      In accordance with section 1122 of the Bankruptcy Code, the Plan provides for

the classification of seven Classes of Claims and/or Interests against each Debtor.  For purposes

of voting and distribution, each Debtor will be assigned a subclass of each Class as follows:

(A) Holdings, and (B) Premier.

    1.     Classes 1(A-B) – Priority Non-Tax Claims.

        a.     Classes 1(A-B) consist of all Priority Non-Tax Claims

    2.     Classes 2(A-B) – Other Secured Claims.

        a.     Classes 2(A-B) consist of all Other Secured Claims.

    3.     Classes 3(A-B) – First Lien Credit Agreement Claims.

        a.     Classes 3(A-B) consist of the First Lien Credit Agreement Claims.

    4.     Classes 4(A-B) – Second Lien Credit Agreement Claims.

        a.     Classes 4(A-B) consist of all Second Lien Credit Agreement

Claims.

    5.     Classes 5(A-B)– General Unsecured Claims.

        a.     Classes 5(A-B) consist of all General Unsecured Claims.

    6.     Classes 6(A-B) – Intercompany Claims.

a.      Classes 6(A-B) consist of all Intercompany Claims.

7.      Classes 7(A-B) – Existing Equity and Membership Interests.

a.      Classes 7(A-B) consist of all Existing Equity and Membership

Interests.

## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS

**A.**      **Summary**

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.      Classes 1(A-B) – Priority Non-Tax Claims.

a.      Classification:  Classes 1(A-B) consist of all Priority Non-Tax Claims.

b.      Treatment:  The Debtors do not believe there are any Class 1(A) Priority Non-Tax Claims against Holdings and any such Claims are Disputed Claims.  Except to the extent that a Class 1(A-B) Holder of a Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, on or as soon as practicable after the Effective Date or when such obligation becomes due in the ordinary course of business in accordance with applicable law or the terms of any agreement or policy that governs such Priority Non-Tax Claim, whichever is

23

later, each Holder of such Class 1( A-B) Priority Non-Tax Claim shall be paid in full in Cash by Reorganized Premier or otherwise receive such treatment as to render such holder Unimpaired.

        c.      Voting:  Classes 1(A-B) are Unimpaired Classes and Holders of Classes 1(A-B) Priority Non-Tax Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

        2.      Classes 2(A-B) – Other Secured Claims.

        a.      Classification:  Classes 2(A-B) consist of all Other Secured Claims.

        b.      Treatment:  The Debtors do not believe that there are any Class 2(A-B) Other Secured Claims.  All Class 2(A-B) Other Secured Claims, if any, are Disputed Claims.  At the sole option of the Debtors, each Holder of an Allowed Class 2(A-B) Other Secured Claim, if any, shall receive one of the following treatments: (i) the Holder of such Class 2(A-B) Other Secured Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction, release, and discharge of such Allowed Class 2(A-B) Other Secured Claim; or (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Class 2(A-B) Other Secured Claim, or as otherwise agreed between the holder of such claim and the Debtors, the Holder of a Class 2(A-B) Other Secured Claim will receive a Cash payment equal to the amount of its Class 2(A-B) Other Secured Claim in full satisfaction, release, and discharge of such claim; or (iii) the legal, equitable and contractual rights to which a Class 2(A-

B) Other Secured Claim entitles the Holder shall be unaltered by the Plan; or (iv) the Holder of a

Class 2(A-B) Other Secured Claim shall receive the treatment described in Section 1124(2) of

the Bankruptcy Code.

        c.      Voting:  Classes 2(A-B) are Unimpaired Classes and Holders of

Class 2(A-B) Other Secured Claims, if any, are not entitled to vote on the Plan.

        3.      <u>Classes 3(A-B) – First Lien Credit Agreement Claims</u>.

        a.      Classification:  Classes 3(A-B) consist of all First Lien Credit

Agreement Claims.

        b.      Treatment of Class 3(A) First Lien Credit Agreement Claims:

Class 3(A) First Lien Credit Agreement Claims shall not receive any distributions on account of

such Class 3(A) First Lien Credit Agreement Claims.

        c.      Treatment of Class 3(B) First Lien Credit Agreement Claims:  On

the Effective Date, in full and final satisfaction, settlement, release, and discharge of all Class

3(B) First Lien Credit Agreement Claims, all Class 3(B) First Lien Credit Agreement Claims

shall be indefeasibly satisfied through the distribution by the Debtors to each Holder of a First

Lien Credit Agreement Claim or its designee as follows:

        (i)      with respect to $32.5 million of Allowed First Lien Credit

Agreement Claims, representing the then-outstanding balance of the

borrowing by the Debtor under the First Lien Credit Agreement as of June

3, 2006, New Equity Interests, with a value that bears the same ratio to the

sum of the value of 100% of the New Equity Interests and the First Lien

25

Credit Agreement Lenders' Payment as the $32.5 million of Allowed First Lien Credit Agreement Claims specified above, bears to the total Allowed First Lien Credit Agreement Claims;

(ii)    with respect to the remaining amount of the in Allowed First Lien Credit Agreement Claims in excess of the $32.5 million amount referred in section V.A.3.(c)(i) of this Plan, the balance of the New Equity Interests, and all of the First Lien Credit Agreement Lenders' Payment.

d.    Voting: Classes 3(A-B) are Impaired Classes. Holders of Class 3(A) First Lien Credit Agreement Claims are deemed to reject the Plan and are not entitled to vote thereon. Holders of Class 3(B) First Lien Credit Agreement Claims are impaired and are entitled to vote to accept or reject the Plan.

4.    Classes 4(A-B) – Second Lien Credit Agreement Claims.

a.    Classification: Classes 4(A-B) consist of all Second Lien Credit Agreement Claims.

b.    Treatment of Class 4(A) Second Lien Credit Agreement Claims: Class 4(A) Second Lien Credit Agreement Claims shall not receive any distributions on account of such Class 4(A) Second Lien Credit Agreement Claims.

c.    Treatment of Class 4(B) Second Lien Credit Agreement Claims: . Holders of Second Lien Credit Agreement Claims in Class 4(B) will not receive any distributions on account of such claims. On the Effective Date, the Second Lien Credit Agreement Claims

26

shall be extinguished and discharged and the Second Lien Credit Agreement shall be of no further force or effect

    d.  Voting:  Classes 4(A-B) are Impaired Classes and Holders of Class 4 (A-B) Second Lien Credit Agreement Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

    5.  <u>Classes 5(A-B) – General Unsecured Claims</u>.

    a.  Classification:  Classes 5(A-B) consist of all General Unsecured Claims.

    b.  Treatment of Class 5(A) General Unsecured Claims:  Class 5(A) General Unsecured Claims shall not receive any distributions on account of such Class 5(A) General Unsecured Claims.

    c.  Treatment of Class 5(B) General Unsecured Claims:  Holders of General Unsecured Claims will not receive any distributions on account of such claims. On the Effective Date, all General Unsecured Claims shall be extinguished and fully discharged.

    d.  Voting:  Classes 5(A-B) are Impaired Classes and Holders of Class 5(A-B) General Unsecured Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

    6.  <u>Classes 6(A-B) – Intercompany Claims</u>.

    a.  Classification:  Classes 6(A-B) consist of all Intercompany Claims.

27

b.      Treatment of Class 6(A) Intercompany Claims:  Class 6(A) Intercompany Claims shall not receive any distributions on account of such Class 6(A) Intercompany Claims.

c.      Treatment of Class 6(B) Intercompany Claims:  Holders of Class 6(B) Intercompany Claims will not receive any distributions on account of such claims.  On the Effective Date, all Class 6(B) Intercompany Claims held by Holdings against Premier shall be extinguished and fully discharged.

d.      Voting:  Classes 6(A-B) are Impaired Classes and Holders of Class 6 (A-B) Intercompany Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

7.      Classes 7(A-B) – Existing Equity and Membership Interests.

a.      Classification:  Classes 7(A-B) consist of all Existing Equity and Membership Interests.

b.      Treatment:  On the Effective Date, all Existing Equity Interests in Premier and all Existing Membership Interests in Holdings shall be deemed cancelled.  Holders of Existing Equity and Membership Interests shall not receive any property or any distribution under this Plan on account of such interests.

c.      Voting:  Classes 7(A-B) are Impaired Classes and Holders of Class 7(A-B) Existing Equity and Membership Interests are conclusively deemed to have voted to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code.

28

B.    **Full Satisfaction, Discharge and Release**

The payments, distributions, grant of entitlements and other treatment, including

cancellation, discharge and/or extinguishment without consideration or distribution, afforded to

Holders of Allowed Claims and Interests against Premier under this Article V shall be in full

and complete satisfaction, discharge and release of and in exchange for such Allowed Claims or

Interests.

## ARTICLE VI

## ACCEPTANCE REQUIREMENTS

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise

provided in section 1126(f) of the Bankruptcy Code, an Impaired Class of Claims has accepted

the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number

of Allowed Claims in such Class actually voting have voted to accept the Plan.

A.    **Acceptance or Rejection of this Plan**

1.    Voting Classes.

Class 3(B) is Impaired under the Plan and Holders of Claims in Class 3(B) are

entitled to vote to accept or reject the Plan.

2.    Presumed Acceptance of this Plan.

Class 1(A-B) and Class 2(A-B) are Unimpaired under the Plan and are, therefore,

conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

Code.

29

3.      Presumed Rejection of this Plan.

Class 3(A) and Classes 4(A-B), 5(A-B), 6(A-B) and 7(A-B) are Impaired and

shall receive no distributions under the Plan and are, therefore, each deemed to have rejected the

Plan pursuant to section 1126(g) of the Bankruptcy Code.

**B.      Confirmation of This Plan Pursuant to
        Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of

Confirmation by acceptance of this Plan by an Impaired Class.  The Debtors request

Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any

Impaired Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code.

The Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant

to section 1129(b) of the Bankruptcy Code requires any such modification.

**C.      Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests (or any Class of

Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall determine such

controversy on or prior to the Confirmation Date.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date.  In addition to the

provisions set forth elsewhere in the Plan regarding means of execution, the following shall

constitute the principal means for the implementation of the Plan.

DOCS_SF:77215.17 70938-001

A.      **Sources of Cash for Plan Distributions**

        All consideration necessary to fund any payments on behalf of the Debtors pursuant hereto shall be obtained from the ABL Facility and Cash from Reorganized Premier, including Cash from Reorganized Premier's business operations.

B.      **Issuance of New Equity Interests in Reorganized Premier**

        On the Effective Date, the Holders of Allowed First Lien Credit Agreement Claims, or their designee, shall acquire 100% of the New Equity Interests as set forth in Article V, Section A(3)(c) in accordance with the terms of the Plan without further act or action under applicable law, regulation, rule or order.  On the Effective Date, Holdings shall be deemed to be dissolved for all purposes without further act or action under applicable law, regulation, rule or order and any assets of Holdings, including any causes of action, shall be transferred to Reorganized Premier.

        Except as otherwise provided by the Plan, the issuance of the New Equity Interests, Equity Grant and Management Options are authorized in accordance with the Plan, without any further action by Holders of Class 3(B) First Lien Credit Agreement Claims.  All of the shares of New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued and fully paid and non-assessable.  Each distribution and issuance referred to in the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such

31

distribution or issuance.  Holders of Existing Equity and Membership Interests will not receive any distributions or retain any property or interest under the Plan on account of such Interests.

## C.    Securities Exemption

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any New Equity contemplated by the Plan and all agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution or sale of securities.  In addition, under section 1145 of the Bankruptcy Code, any New Equity Interests issued in accordance with the Plan and any and all agreements incorporated therein will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions on the transferability of such securities and instruments; and (4) applicable regulatory approval.

## D.    Powers of Reorganized Premier

On the Effective Date, Reorganized Premier shall be authorized to undertake and implement the transactions described herein, including the execution of such other and further documents, as are necessary or appropriate to implement the Plan.  Reorganized Premier will be the entity under the Plan that is exclusively responsible for paying all Allowed Claims entitled to receive a distribution pursuant to the Plan.

32

For purposes of the Plan, and subject to its obligations under the Plan, Reorganized Premier is not intended as, and is not in fact, a substitute for or a successor to either of the Debtors in any way whatsoever.

### E.    Cancellation of Securities and Agreements

On the Effective Date, except as otherwise specifically provided for in the Plan, (A) the obligations of the Debtors under (1) the First Lien Credit Agreement, (2) the Second Lien Credit Agreement, and (3) any other note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated or assumed pursuant to the Plan), shall be discharged and neither the Debtors nor Reorganized Premier shall have any continuing obligations thereunder; and (B) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors (other than those obligations that are specifically reinstated pursuant to the Plan) shall be released and discharged; *provided, however*, notwithstanding Confirmation or the occurrence of the Effective Date, any agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan to the extent and as provided herein.

33

From and after the Effective Date, the Agent and the Second Lien Credit Agreement Lender shall, at the expense of Reorganized Premier, (1) deliver to Reorganized Premier (and, if necessary, execute) any Uniform Commercial Code termination statements, lien releases, mortgage releases, terminations of patent and trademark security agreements, discharges of security interests, and other similar discharge or release documents (and if applicable, in recordable form) as are prepared by Reorganized Premier and are reasonably necessary to release, as of record, the security interests, financing statements, and all other notices of security interests and liens previously filed by the Agent, any First Lien Credit Agreement Lender or the Second Lien Credit Agreement Lender, against any of the Debtors with respect to the First Lien Credit Agreement and the Second Lien Credit Agreement (collectively, the "Lender Releases"), and (2) authorize Reorganized Premier to prepare and file the Lender Releases on behalf of the Agent, the First Lien Credit Agreement Lenders, and the Second Lien Credit Agreement Lender, respectively.  If such Lender Releases require execution by the Agent, any First Lien Credit Agreement Lenders or the Second Lien Credit Agreement Lender, as applicable, such party shall promptly execute any of the aforementioned documents which are reasonably deemed necessary by Reorganized Premier to release the Agent's, or any First Lien Credit Agreement Lender's or the Second Lien Credit Agreement Lender's liens and security interests in the assets of Reorganized Premier or Holdings.

F.      **Exit Facility**

On the Effective Date, Reorganized Premier shall be authorized to enter into the ABL Facility.  The terms of the ABL Facility shall be subject to the terms, provisions and

34

conditions of documentation acceptable to the Debtors, the Agent, Reorganized Premier, and the ABL Lenders.  Subject to any limitations under the ABL Facility, Reorganized Premier shall be authorized to (i) enter into the ABL Facility, (ii) grant any liens, and security interests and incur or guaranty the indebtedness provided by the ABL Facility, respectively, and (iii) issue, execute, deliver and perform all documents, instruments and agreements necessary or appropriate to implement and effectuate all obligations under the ABL Facility, and to take all other actions necessary or appropriate to implement and effectuate the borrowings under the ABL Facility.

**G.**      **New Charter Documents**

On or before the Effective Date, Reorganized Premier shall file their applicable Charter Documents with the applicable Secretary of State and/or other applicable authorities in accordance with the corporate laws of the state of incorporation.  Reorganized Premier may amend and restate any new certificates of incorporation, amend and restate new by-laws and other constituent documents as permitted by the laws of the state of incorporation and their new certificate of incorporation, new membership agreements, and/or new by-laws.

**H.**      **Directors and Officers of Reorganized Premier**

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the directors of the Reorganized Premier Board shall consist of certain directors, each of whom shall be selected by the Agent. The directors of Reorganized Premier, and the proposed officers of Reorganized Premier shall be identified in the Plan Supplement.

35

Each of the directors and officers of Reorganized Premier shall serve in accordance with applicable non-bankruptcy law and Reorganized Premier's Charter Documents, as the same may be amended from time to time. From and after the Effective Date, the directors and officers of Reorganized Premier shall be selected and determined in accordance with the provisions of applicable law and Reorganized Premier's Charter Documents.

Upon the Effective Date, and without any further action by the shareholders, directors and officers of the Debtors, Reorganized Premier's Charter Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of the Plan, and (b) to prohibit the issuance by Reorganized Premier of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law.

**I.    <u>Equity Grant, and Issuance of Management Options</u>**

On the Effective Date or as soon as practicable thereafter, Reorganized Premier will adopt and implement the terms of the Equity Grant and the issuance of the Management Options and subject, in all respects, to the following terms and conditions set forth in this Plan unless otherwise agreed by Reorganized Premier and the applicable Entities.

Issuances made under the Management Options and Equity Grants will dilute the interests of the common stockholders of Reorganized Premier. In connection with the issuance of the Management Options and Equity Grants to employees of the Debtors, Reorganized Premier may take whatever actions are necessary to comply with applicable federal, state, local and international tax withholding obligations, including withholding from distributions a portion

36

of the Reorganized Premier stock and/or options and selling such securities to satisfy tax withholding obligations including, without limitation, income, social security, and Medicare taxes.

**J.**      **Revesting of Assets in Reorganized Premier**

Upon the Effective Date, Reorganized Premier shall be vested with all right, title and interest in the respective Assets of its Estate, and of the Estate of Holdings and such property shall become the property of Reorganized Premier free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as expressly set forth in the Plan.

**K.**      **Corporate Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, Reorganized Premier shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of restructuring, disposition or transfer containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation or any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate membership interests, certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be

37

necessary or appropriate, including making filings or recordings that may be required by

applicable law.

**L.        Corporate Action**

Each of the matters provided for by this Plan involving the corporate structure of

Reorganized Premier, or corporate or related actions to be taken by or required of Reorganized

Premier shall, as of the Effective Date, be deemed to have occurred and be effective as provided

in this Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to

the extent taken prior to the Effective Date, ratified in all respects without any requirement of

further action by Holders of Claims or Interests, directors of the Debtors, or any other Entity.

**M.        Effectuating Documents; Further Transactions**

On and after the Effective Date, Reorganized Premier and its respective officers,

directors and members are authorized to and may issue, execute, deliver, file or record such

contracts, securities, instruments, releases, and other agreements or documents and take such

actions as may be necessary or appropriate to effectuate, implement, and further evidence the

terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and

on behalf of Reorganized Premier, without the need for any approvals, authorization, or consents

except for those expressly required pursuant to the Plan.

**N.        Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from any of the

Debtors to Reorganized Premier pursuant to, in contemplation of, or in connection with the Plan

or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or

38

other interest in the Debtors; (2) the creation, modification, consolidation, or recording of any

mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by

such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the

making, delivery, or recoding of any deed or other instrument of transfer under, in furtherance

of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other

instrument of transfer executed in connection with any transaction arising out of, contemplated

by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp

tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage

recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or

governmental assessment, and the Confirmation Order shall direct the appropriate state or local

governmental officials or agents to forego the collection of any such tax or governmental

assessment and to accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax or governmental assessment.

**O.**     **Employee and Retiree Benefits**

Except as required under this Plan, on and after the Effective Date, Reorganized

Premier (1) may honor, in the ordinary course of business, any contracts, agreements, policies,

programs, and plans, in each case to the extent disclosed in the Disclosure Statement or the

Debtors' pleadings filed on the Petition Date, for, among other things, compensation, health care

benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance

benefits, welfare benefits, workers' compensation insurance, and accidental death and

dismemberment insurance for the directors, officers, and employees of any of the Debtors who

39

served in such capacity at any time; and (2) will honor, in the ordinary course of business, accrued, but unpaid Claims of employees employed by Reorganized Premier as of the Effective Date for accrued vacation time or similar Claims for accrued paid time off arising prior to the Petition Date in accordance with the terms of the Plan; *provided, however,* that Reorganized Premier's performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program or plan. Nothing in the plan shall limit, diminish, or otherwise alter the Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

**P.**     <u>**Preservation of Rights of Action**</u>

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released including, for the avoidance of doubt, Avoidance Actions and the releases by the Debtors provided in Article XI of the Plan, Reorganized Premier shall acquire and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date and Reorganized Premier's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Reorganized Premier may pursue such Causes of Action, as it determines to be appropriate. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that Reorganized Premier, will not pursue

40

any and all available Causes of Action against them.  Except with respect to Causes of Action as

to which the Debtors have released any Person or Entity on or before the Effective Date

(including pursuant to the releases by the Debtors pursuant to the Plan or otherwise), the Debtors

and Reorganized Premier, expressly reserve all rights to prosecute any and all Causes of Action

against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of

Action against an Entity are expressly waived, relinquished, exculpated, released, compromised,

or settled in the Plan or a Bankruptcy Court order, Reorganized Premier expressly reserves all

Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the

doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel

(judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as

a consequence of the Confirmation or consummation of the Plan.  Reorganized Premier may, in

its sole discretion, prosecute, compromise, settle or dispose of any and all Causes of Action

without further notice or approval by the Bankruptcy Court.

**Q.      Discharge of Premier**

Except as otherwise provided in the Plan or in the Confirmation Order, rights

afforded in, and all consideration distributed under, this Plan shall be in exchange for, and in

complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever

against Premier or any of its assets or properties.  Regardless of whether property shall have been

distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date,

Premier shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy

Code from any and all Claims, including, without limitation, demands and liabilities that arose

41

before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or

502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is

Allowed under Section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is

Allowed under Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon

such debt accepted this Plan.

**R.    Debtors' Releases**

   Notwithstanding anything to the contrary in the Plan, the failure of the Court to

approve any of the provisions set forth in Section 11.C, D or E of this Plan shall not constitute a

failure of any condition to ether confirmation or the effectiveness of the Plan.

**S.    United States Trustee Fees**

   All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall

be paid by the Debtors on or before the Effective Date.  Thereafter, Reorganized Premier shall

pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until

entry of a final decree or an order converting or dismissing the Cases.

**T.    Subordination**

   Pursuant to section 510(a) of the Bankruptcy Code, nothing herein shall be

deemed to limit the enforceability of any subordination agreement or intercreditor agreement,

including, without limitation, the Intercreditor Agreement, that is otherwise enforceable under

applicable nonbankruptcy law.  Accordingly, any distributions made hereunder will be made

subject to any enforceable subordination or intercreditor agreement known to the Debtors.

Creditors that are parties to any such enforceable subordination or intercreditor agreements

42

(other than the Intercreditor Agreement) shall notify the Debtors of their existence in advance of

the Effective Date and shall provide the Debtors with copies of such agreements, or identify such

agreements if they are already in the Debtors' possession. Failure to do so shall be deemed a

waiver of such rights.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      **Dates of Distributions**

Except as otherwise provided in the plan, on the Effective Date or as soon as

reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date,

on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable

thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of

the distributions that the Plan provides for Allowed Claims in the applicable Class and in the

manner provided herein. In the event that any payment or act under the Plan is required to be

made or performed on a date that is not on a Business Day, then the making of such payment or

the performance of such act may be completed on the next succeeding Business Day, but shall be

deemed to have been completed as of the required date. If and to the extent there are Disputed

Claims, distributions on account of any such Disputed Claims shall be made pursuant to the

provisions provided in this Plan. Except as otherwise provided herein, Holders of Claims shall

not be entitled to interest, dividends or accruals on the distributions provided for herein,

regardless of whether distributions are delivered on or at any time after the Effective Date.

43

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to this Plan and Reorganized Premier shall have no liability on account of any Claims or Interests except as set forth in this Plan and in the Confirmation Order. All payments and all distributions made by Reorganized Premier under this Plan shall be in full and final satisfaction, settlement and release of all Claims against Reorganized Premier.

**B.     Disbursing Agent**

Except as provided herein, all distributions under the Plan shall be made by Reorganized Premier as Disbursing Agent, or by such other Entity designated by the Debtors as a Disbursing Agent on the Effective Date. Reorganized Premier, or such other Entity designated by the Debtors, shall not be required to give any bond or surety or other security for the performance of Reorganized Premier's duties as Disbursing Agent unless otherwise ordered by the Bankruptcy Court.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**C.     Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of Reorganized Premier except that Cash

payments made to foreign Creditors may be made in such funds and by such means as are

necessary or customary in a particular foreign jurisdiction.

**D.      Rounding of Payments**

Whenever payment of a fraction of a cent would otherwise be called for, the

actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the

extent Cash remains undistributed as a result of the rounding of such fraction to the nearest

whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

**E.      Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim, or as provided in

this Plan, all distributions shall be made upon the Distribution Date.  Distributions to any Holder

of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim,

as determined for federal income tax purposes, and then, to the extent the consideration exceeds

such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent

that interest is an allowable portion of such Allowed Claim).  Whenever any payment of a

fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of

such fraction down to the nearest cent.

1.      General Distribution Procedures.

Reorganized Premier, or any other duly appointed Disbursing Agent, shall make

all distributions of Cash or other property required under this Plan, unless this Plan specifically

provides otherwise. All cash and other property held by Reorganized Premier for distribution

under this Plan not be subject to any claim by any Person, except as provided under this Plan.

45

2.      Address for Delivery of Distributions.

Distributions to Holders of Allowed Claims, to the extent provided for under the

Plan, shall be made (1) at the address set forth on any proofs of claim filed by such Holders (to

the extent such proofs of claim are filed in the Cases), or (2) at the addresses set forth in any

written notices of address change delivered to the Debtors.

3.      Undeliverable Distributions and Unclaimed Property.

If the distribution to the Holder of any Allowed Claim is returned to Reorganized

Premier as undeliverable, no further distribution shall be made to such Holder, and Reorganized

Premier shall have no obligation to make any further distribution to the Holder, unless and until

Reorganized Premier is notified in writing of such Holder's then current address.

Any Entity which fails to claim any cash within one year from the date upon

which a distribution is first made to such entity shall forfeit all rights to any distribution under

this Plan.  Entities which fail to claim cash shall forfeit their rights thereto and shall have no

claim whatsoever against the Debtors or Reorganized Premier or against any Holder of an

Allowed Claim to whom distributions are made by Reorganized Premier.

4.      Withholding Taxes.

Pursuant to section 346(f) of the Bankruptcy Code, Reorganized Premier shall be

entitled to deduct any federal, state or local withholding taxes from any Cash payments made

with respect to Allowed Claims, as appropriate.  From and as of the Effective Date, Reorganized

Premier shall comply with all reporting obligations imposed on it by any Governmental Unit in

accordance with applicable law with respect to such withholding taxes.  As a condition to

receiving any distribution under this Plan, Reorganized Premier may require that the Holder of

an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's

taxpayer identification number and such other information and certification as may be deemed

necessary for Reorganized Premier to comply with applicable tax reporting and withholding

laws.

     5.    <u>Setoffs</u>.

     Reorganized Premier may, to the extent permitted under applicable law, setoff

against any Allowed Claim and any distributions to be made pursuant to this Plan on account of

such Allowed Claim, the claims, rights and causes of action of any nature (other than claims

arising under chapter 5 of the Bankruptcy Code) that Reorganized Premier may hold against the

Holder of such Allowed Claim that are not otherwise waived, released or compromised in

accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any

Claim hereunder shall constitute a waiver or release by Reorganized Premier of any such claims,

rights and causes of action that Reorganized Premier possesses against such Holder.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**A.**    **<u>No Filing of Proofs of Claim</u>**

     Except as otherwise provided under the Plan, Holders of Claims shall not be

required to file a proof of claim and no parties should file a proof of claim.  Unless disputed by

the Holder of a Claim, the amount set forth in the applicable Debtor's books and records shall

constitute the Allowed amount of such Holder's Claim.  If the Holder of a Claim disagrees with

47

the Debtors' books and records with respect to the Allowed Amount of such Holder's Claim,

such Holder must advise Reorganized Premier in writing, in which event the Claim will become

a Disputed Claim.  Reorganized Premier intends to attempt to resolve any such disputes

consensually or through judicial means outside the Bankruptcy Court.  Nevertheless,

Reorganized Premier may, in its discretion, file with the Bankruptcy Court an objection to the

allowance of such Claim or any other appropriate motion or adversary proceeding with respect

thereto.  All such objections shall be litigated to Final Order, provided however, that

Reorganized Premier, may compromise, settle, withdraw or resolve any objections to Claims

without further order of the Bankruptcy Court.

**B.**    **Disputed Claims**

        All objections to Claims shall be filed and served not later than one-hundred-

twenty (120) days following the Effective Date; provided, however, such date may be extended

by the Bankruptcy Court beyond such one-hundred-twenty (120) days upon motion filed by

Reorganized Premier prior to the expiration of the above-noted 120 day deadline.  The filing of a

motion to extend the deadline to object to any Claims shall automatically extend such deadline

until a Final Order is entered on such motion.  In the event that such motion to extend the

deadline to object to Claims is denied by the Bankruptcy Court, such deadline shall be the later

of the current deadline (as previously extended, if applicable) or 30 days after the Bankruptcy

Court's entry of an order denying the motion to extend such deadline.  Unless otherwise

provided in the Confirmation Order, Reorganized Premier is authorized to settle, or withdraw

any objections to, any Disputed Claim following the Effective Date without further notice to

Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

C.    **Procedures Regarding Disputed Claims**

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtors and the Holder of the Claim. No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

The Debtors (prior to the Effective Date) or Reorganized Premier (after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to this Plan shall irrevocably constitute and be a conclusive and final determination of the maximum allowable amount of Claim, should it become an Allowed Claim. Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to this Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable

49

amount of such Claim as a result of any subsequent adjudication or actual determination of the

allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not

have recourse to the Debtors or Reorganized Premier in the event the allowed amount of the

Claim of such Holder is at any time later determined to exceed the estimated maximum

allowable amount.

**D.**     **Allowance of Claims**

Following the date on which a Disputed Claim becomes an Allowed Claim after

the Distribution Date, Reorganized Premier shall pay directly to the Holder of such Allowed

Claim the amount provided for under this Plan, as applicable.

## ARTICLE X

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Assumption and Rejection of Executory Contracts and Unexpired Leases**

Except for any executory contracts or unexpired leases:  (i) that are listed as

Rejected Contracts in the Plan Supplement; (ii) that previously were assumed or rejected by an

order of the Bankruptcy Court, pursuant to sections 365 and 1123 of the Bankruptcy Code; or

(iii) as to which a motion for approval of the assumption or rejection of such contracts or leases

has been Filed and served prior to Confirmation; each executory contract and unexpired lease

entered into by the Debtors prior to the Petition Date that has not previously expired or

terminated pursuant to its own terms shall be deemed assumed by Reorganized Premier pursuant

to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  It is anticipated that

the terms of certain employment agreements between Premier and certain of Premier's

50

employees may be modified as agreed between the affected employee and the First Lien Credit

Agreement Lenders and that such employment agreements will be assumed by Reorganized

Premier, as modified.  The Confirmation Order shall constitute an Order of the Bankruptcy Court

approving both (i) the assumption of the Assumed Contracts by Reorganized Premier, and (ii)

the rejection of the Rejected Contracts, pursuant to sections 365 and 1123 of the Bankruptcy

Code, as of the Effective Date.  Any provision of an Assumed Contract that allows a

counterparty thereto to terminate, recapture, impose any penalty, condition any renewal

extension or modify any term or condition upon a "change of control" provision constitutes an

unenforceable provision that is void and of no force and effect.

**B.**     **Objections to Assumption of Executory Contracts and Unexpired Leases**

        1.     Objection Procedure Generally.

        Any party objecting to Premier's proposed assumption of an executory contract or

unexpired lease based on a lack of adequate assurance of future performance or on any other

ground including the adequacy of the "cure" amount set forth on the Cure Payment Schedule

shall file and serve a written objection to the assumption of such contract or lease on or before

the deadline to object to Confirmation.  Failure to timely file an objection shall constitute consent

to the assumption of the applicable Assumed Contract, including an acknowledgment that the

proposed assumption provides adequate assurance of future performance and that the applicable

"cure" amount set forth on the Cure Payment Schedule is proper and sufficient for purposes of

section 365 of the Bankruptcy Code.

        2.     Objection Based on Grounds Other Than "Cure" Amount.

If any party timely and properly files an objection to assumption based on any ground other than the adequacy of the applicable "cure" amount set forth on the Cure Payment Schedule and the Bankruptcy Court ultimately determines that Premier cannot assume the executory contract or lease or that Reorganized Premier cannot provide adequate assurance of future performance as proposed, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been excluded from the Cure Payment Schedule and shall be rejected.

3.    Objection Based on "Cure" Amount.

If any party timely and properly files an objection to assumption based on the adequacy of the applicable "cure" amount set forth the Cure Payment Schedule and such objection is not resolved between Premier and the objecting party, the Bankruptcy Court shall resolve such dispute at the Confirmation Hearing or another hearing date to be determined by the Bankruptcy Court.  The resolution of such dispute shall not affect the assumption of the executory contract or lease that is the subject of such dispute but rather shall affect only the "cure" amount Reorganized Premier, must pay in order to assume such contract or lease. Notwithstanding the immediately preceding sentence, if Premier, in its discretion, determines that the amount asserted to be the necessary "cure" amount would, if ordered by the Bankruptcy Court, make the assumption of the executory contract or lease imprudent, then Premier may elect to (1) reject the executory contract or lease, or (2) request an expedited hearing on the resolution of the "cure" dispute, exclude assumption or rejection of the contract or lease from the scope of

the Confirmation Order, and retain the right to reject the executory contract or lease pending the outcome of such dispute.

C.      **Payment Related to Assumption of Executory Contracts and Unexpired Leases**

If not the subject of dispute as of the Confirmation Date, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied by Reorganized Premier pursuant to section 365(b) of the Bankruptcy Code: (i) by payment in Cash within thirty (30) days following the Effective Date, of (1) the applicable "cure" amount set forth in the schedule of Assumed Contracts, (2) such other amount as ordered by the Bankruptcy Court, or (3) such other amount as agreed upon by Reorganized Premier; or (ii) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding the appropriate "cure" amount, payment of the amount otherwise payable hereunder shall be made following entry of a Final Order or agreement.

D.      **Rejection Damage Claims for Rejected Contracts**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be treated as a Class 5(A-B) General Unsecured Claim, subject to the provisions of the Plan, and any Holders thereof, shall not receive on distributions on account of such claim.

## ARTICLE XI

## EFFECT OF CONFIRMATION AND RELATED PROVISIONS

A.    **Effect of Confirmation**

The provisions of the confirmed Plan shall bind the Debtors, any entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has Filed a proof of Claim or Interest in the Cases, whether or not the Claim of such Creditor or the Interest of such Interest Holder is Impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and debts shall be as fixed and adjusted pursuant to this Plan. With respect to any taxes of the kind specified in Bankruptcy Code section 1146(c), this Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded.

B.    **Injunction**

1.    **Generally.**

**Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or interest, (a)**

54

seeking to hold (i) the Debtors, Reorganized Premier or the Holders of the New Equity

Interests, or (ii) the property of the Debtors, Reorganized Premier or the Holders of the

New Equity Interests, liable for any Claim, obligation, right, interest, debt, or liability of

the Debtors.

        2.      **Injunction Related to Rights of Action and Terminated Claims,**

**Administrative Expenses or Interests.**

        **Except as provided in the Plan or in the Confirmation Order, as of the**

**Confirmation Date, all Entities that have held, currently hold or may hold a Claim,**

**Administrative Expense, Interest, or other debt or liability that is stayed, Impaired, or**

**terminated pursuant to the terms of the Plan are permanently enjoined from taking any of**

**the following actions either (x) against the Debtors, Reorganized Premier, the Holders of**

**the New Equity Interests, or their property on account of all or such portion of any such**

**Claims, Administrative Expenses, Interests, debts, or liabilities that are stayed, Impaired,**

**or terminated or (y) against any Person with respect to any right of action or any objection**

**to a Claim, Administrative Expense, or Interest, which right of action or objection, under**

**the Plan, is waived, released, assigned or exclusively retained by any of the Debtors:  (a)**

**commencing or continuing, in any manner or in any place, any action or other proceeding;**

**(b) enforcing, attaching, collecting, or recovering in any manner any judgment, award,**

**decree or order, (c) creating, perfecting, or enforcing any lien or encumbrance; (d)**

**asserting a setoff, right of subrogation or recoupment of any kind against any debt,**

**liability, or obligation due; and (e) commencing or continuing, in any manner or in any**

place, any action that does not comply with or is inconsistent with the provisions of the

Plan.  To avoid any doubt, except as otherwise expressly noted in the Plan, nothing in the

Plan or herein shall be construed or is intended to affect, enjoin, modify, release, or waive

any claims, rights, and actions that a third party may have against a person other than the

Debtors, or Reorganized Premier provided that such claims, rights, and actions are wholly

separate and exist independently from any claims, rights, and actions of the Estates.

C.    **Exculpation**

                    As of and subject to the occurrence of the Effective Date, each of the Debtors,

the Prepetition Agent, Holders of First Lien Credit Agreement Claims, Coda Capital

Partners L.L.C. and its affiliates, Angelo, Gordon & Co. LP and its affiliates, and each of

their respective Agents, shall neither have nor incur any liability to any Person or Entity

for any act taken or omitted to be taken, in connection with, or related to, the formulation,

preparation, dissemination, implementation, administration, Confirmation or

consummation of the Plan or any contract, instrument, waiver, release or other agreement

or document created or entered into, in connection with the Plan, or any other act taken or

omitted to be taken in connection with the Cases; *provided, however*, that the foregoing

provisions of this subsection shall have no effect on the liability of any Person or Entity that

results from any such act or omission that is determined in a Final Order to have

constituted gross negligence or willful misconduct.

D.    Debtor Release

As of and subject to the occurrence of the Effective Date, each Debtor, for itself and its respective successors, assigns, and transferees shall be deemed to have released any and all Claims and Causes of Action against the Prepetition Agent, and Holders of First Lien Credit Agreement Claims, Coda Capital Partners L.L.C. and its affiliates, Angelo, Gordon & Co. LP and its affiliates, and each of their and the Debtors' respective Agents, arising prior to the Effective Date, *provided, however*, that the foregoing shall not operate as a waiver of or release from any Claims or Causes of Action arising out of (i) any express contractual obligation owing by any such parties, or (ii) the willful misconduct or gross negligence of any such parties in connection with, related to, or arising out of Chapter 11 Cases, the pursuit of Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan.

E.    Third Party Release

As of and subject to the occurrence of the Effective Date, each Creditor that affirmatively elects to grant this release by checking the appropriate box on the ballot provided to such Creditor in connection with solicitation of such Creditors' vote to accept or to reject the Plan, for itself and its respective successors, assigns, transferees, such Creditors' officers and directors, acting in such capacities as of the Petition Date, such Creditors' agents, members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its vote, be deemed to have released the Prepetition Agent, Holders of First Lien Credit Agreement Claims,

**Coda Capital Partners L.L.C. and its affiliates, Angelo, Gordon & Co. LP and its affiliates, and each of their and the Debtors' respective Agents from any and all direct Claims and Causes of Action held by such Creditor whatsoever, or in any manner arising from or related to, in whole or in part, (i) the Debtors, (ii) the Debtors' restructuring, (iii) the conduct of the Debtors' businesses, (iv) the Chapter 11 Cases, (v) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (vi) the business or contractual arrangements between any Debtor and any Agent thereof, and/or (vii) the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, which claims are based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date, (the matters set forth in sections (i) through (vii) of this section being referred to as the "Released Claims") *provided, however,* that, with respect to each Person or Entity receiving the benefit of such release, the releases provided to such Person or Entity shall only be effective so long as such Person or Entity does not assert any claims arising from any of the transactions that are the subject of any Released Claims against the Creditor granting the releases set forth herein.**

**F.**     **Subsequent Discovery of Facts Does Not Affect Enforceability of Releases**

Each releasing party under this Plan shall be deemed to have granted the releases set forth herein, notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle, including section 1542

58

of the California Civil Code, which would limit the effect of such releases to those Claims or causes of action actually known or suspected to exist at the time of Confirmation.  Section 1542 of the California Civil Code generally provides as follows:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## ARTICLE XII

## RETIREE BENEFITS

The Debtors do not have any retiree benefit plans pursuant to Section 1129(a)(13) of the Bankruptcy Code.

## ARTICLE XIII

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtors do not charge any rates for purposes of section 1129(a)(6) that are regulated by any governmental regulatory commission with jurisdiction under applicable nonbankruptcy law.

## ARTICLE XIV

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

A.    **Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Cases and any of the proceedings related to the Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C.

§ 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law,

including, without limitation, such jurisdiction as is necessary to ensure that the purpose and

intent of the Plan are carried out.  Without limiting the generality of the foregoing, the

Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)     to establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code), resolve any objections to the allowance or priority of Claims, Administrative Expense or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

(2)     to grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(3)     to resolve any matters related to the rejection of any executory contract or unexpired lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear, determine, and, if necessary, liquidate any Claims or Administrative Expenses arising therefrom;

(4)     to ensure that distributions to Holders of Allowed Claims, are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(5)     to decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(6)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

60

DOCS_SF:77215.17 70938-001

(7)     to resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or the Confirmation Order;

(8)     subject to the restrictions on modifications provided in any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, to modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(9)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(10)    to consider and act on any dispute regarding and the compromise and settlement of any Claim against the Debtors;

(11)    to enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtors wherever located;

(12)    to hear and determine any motions or contested matters involving Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Cases, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Debtors;

(13)    to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(14)     to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings issued or entered in connection with the Cases or the Plan;

(15)     to remand to state court any claim, cause of action, or proceeding involving the Debtors that was removed to federal court in whole or in part in reliance upon 28 U.S.C. § 1334;

(16)     to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

(17)     to determine any other matter not inconsistent with the Bankruptcy Code; and

(18)     to enter an order or final decree concluding the Cases.

**B.      Miscellaneous Matters**

1.      Headings.

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

2.      Notices.

All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

| | |
|---|---|
| Counsel for Debtors: | and |
| | |
| Pachulski Stang Ziehl & Jones LLP | Scott Nelson |
| Laura Davis Jones, Esq. | President and Chief Executive Officer, |
| David M. Bertenthal, Esq. | Premier Trailer Leasing |
| Joshua M. Fried, Esq. | 681 Moore Road, Ste. 320 |
| 919 North Market Street, 17th Floor | King of Prussia, PA  19406 |
| Wilmington, DE  19801 | |
| | |
| Counsel for the Agent | and |

| | |
|---|---|
| Proskauer Rose LLP | Proskauer Rose LLP |
| Peter J. Antoszyk, Esq. | Jeffrey W. Levitan, Esq. |
| One International Place | Eleven Times Square |
| Boston, MA 02110-2600 | New York, NY 10036-8299 |

All notices and requests to any Person of record holding any Claim, Administrative Expense, or Interest shall be sent to such Person at the Person's last known address or to the last known address of the Person's attorney of record. Any such Person may designate in writing any other address for purposes of this Section of the Plan, which designation will be effective on receipt.

      3.     <u>Successors and Assigns</u>.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

      4.     <u>Severability of Plan Provisions</u>.

If, prior to Confirmation, any nonmaterial term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the

Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

      5.    <u>Term of Injunctions or Stays</u>.

      Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order the Bankruptcy Court, and extent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

      6.    <u>Entire Agreement</u>.

      Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

      7.    <u>Additional Documents</u>.

      On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, Reorganized Premier, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents

64

and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

        8.    <u>Inconsistencies</u>.

In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**ARTICLE XV**

**CONDITIONS TO CONFIRMATION AND EFFECTIVENESS**

**A.**      **<u>Conditions Precedent to Plan Confirmation</u>**

It shall be a condition to Confirmation hereof that all of the material terms and conditions hereof are approved or jointly waived by the Debtors and the Agent.

**B.**      **<u>Conditions Precedent to Plan Effectiveness</u>**

The Plan will not be consummated and the Effective Date will not occur unless and until (A) the Confirmation Order is in a form acceptable to both the Debtors and to the Agent and is entered by the Bankruptcy Court; (B) the Plan and Plan Supplement, including any amendments, modifications, or supplements thereto shall be acceptable to the Debtors and the Agent; (C) the ABL Facility and such other corporate documents required to implement the Plan, as determined by the Debtors and the Agent, shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof; (D) all actions, documents, certificates, and agreements necessary to implement this Plan, as determined by the Debtors and

65

the Agent, shall have been effected or executed and delivered to the required parties and, to the

extent required, filed with the applicable governmental units in accordance with applicable laws

have been fully executed and delivered; and (E) the Confirmation Order shall either be a Final

Order or, if an appeal has been Filed, no stay has been obtained.  The foregoing conditions may

be jointly waived by the Debtors and the Agent (such waiver shall not require any notice,

Bankruptcy Court order, or any further action).

**C.**    **Effect of Non-Occurrence of Conditions to Effective Date**

Each of the conditions to the Effective Date must be satisfied or duly waived, as

provided above, within thirty days after the Confirmation Date.  If the Confirmation Order is

vacated for failure to satisfy a condition to the Effective Date, the Plan shall be deemed null and

void in all respects.

**ARTICLE XVI**

**EFFECT OF CONFIRMATION**

**A.**    **Binding Effect of Confirmation**

Confirmation will bind the Debtors; all Holders of Claims and Existing Equity

Interests and other parties in interest to the provisions of the Plan whether or not the claim or

interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim

or Interest has accepted the Plan.

**B.**    **Good Faith**

Confirmation of the Plan shall constitute a finding that:  (i) the Plan has been

proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code,

66

and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**C.**     **No Limitations on Effect of Confirmation**

Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

## ARTICLE XVII

## MODIFICATION OR WITHDRAWAL OF PLAN

**A.**     **Modification of Plan**

The Debtors may seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Debtors and the Agent reserve the right to amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation if the Debtors and the Agent determine that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

After Confirmation of the Plan, but prior to the Effective Date, Premier or Holdings may apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan. After the Effective Date, Reorganized Premier may apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

67

**B.**     **Withdrawal of Plan**

The Debtors reserve the right to revoke and withdraw the Plan at any time prior to

the Effective Date, in which case the Plan will be deemed to be null and void.

**ARTICLE XVIII**

**CONFIRMATION REQUEST**

The Debtors request that the Bankruptcy Court confirm the Plan and that it do so,

if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection

of the Plan by any Impaired Class.

Dated:  August 22, 2011          PTL HOLDINGS LLC


                                      */s/ Scott Nelson*
                           By:        Scott Nelson
                           Its:       Authorized Officer




Dated:  August 22, 2011          PREMIER TRAILER LEASING, INC.


                                      */s/ Scott Nelson*
                           By:        Scott Nelson
                           Its:       Chief Executive Officer

DOCS_SF:77215.17 70938-001