# EXHIBIT C

# EXHIBIT C

### Liquidation Analysis

THE FOLLOWING LIQUIDATION ANALYSIS IS AN ESTIMATE OF THE PROCEEDS THAT MAY BE GENERATED AS A RESULT OF THE HYPOTHETICAL CHAPTER 7 LIQUIDATION OF PREMIER TRAILER, LLC (THE "COMPANY") ASSETS. THE ANALYSIS IS BASED UPON A NUMBER OF SIGNIFICANT ASSUMPTIONS WHICH ARE DESCRIBED BELOW. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE COMPANY'S ASSETS AND IS NOT NECESSARILY INDICATIVE OF THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION.

Pursuant to section 1129(a)(7) of the Bankruptcy Code (often called the best interests test) (see "Best Interests Test" above), each holder of an allowed claim or allowed equity interest must either (1) accept the Plan or (2) receive or retain under the Plan property of a value, as of the assumed effective date of the Plan, that is not less than the value such non-accepting holder would receive or retain if we were to be liquidated under chapter 7 of the Bankruptcy Code.

In determining whether the best interests test has been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Company's assets under chapter 7. The Company, with the assistance of our financial advisors, has prepared this hypothetical liquidation analysis in connection with this Disclosure Statement. The liquidation analysis reflects the estimated cash proceeds, net of liquidation-related costs, that would be available to our creditors if we were to be liquidated pursuant to a chapter 7 liquidation as an alternative to continued operation of our business. Accordingly, asset values discussed herein may be different than amounts referred to elsewhere in this Disclosure Statement, including the Plan. The liquidation analysis is based upon the assumptions discussed herein and in this Disclosure Statement.

UNDERLYING THE LIQUIDATION ANALYSIS ARE NUMEROUS ESTIMATES AND ASSUMPTIONS REGARDING LIQUIDATION PROCEEDS. THE LIQUIDATION ANALYSIS WAS NOT PREPARED WITH A VIEW TOWARD PUBLIC DISCLOSURE OR WITH A VIEW TOWARD COMPLYING THE GUIDELINES ESTABLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS WITH RESPECT TO PROSPECTIVE FINANCIAL INFORMATION, BUT IN THE VIEW OF MANAGEMENT WAS PREPARED ON A RESONABLE BASIS, REFLECTS THE BEST CURRENTLY AVAILABLE ESTIMATES AND JUDGMENTS, AND PRESENTS, TO THE BEST OF MANAGEMENT'S KNOWLEDGE AND BELIEF, THE EXPECTED RESULTS OF LIQUIDATION. ALTHOUGH DEVELOPED AND CONSIDERED REASONABLE BY THE COMPANY'S MANAGEMENT AND ITS ADVISORS, THE ASSUMPTIONS ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, REGULATORY AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE COMPANY AND ITS MANAGEMENT. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF WE WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THE RESULTS SET FORTH HEREIN AND READERS ARE CAUTIONED NOT TO PLACE UNDUE RELIANCE ON THIS ANALYSIS.

NO INDEPENDENT ACCOUNTANTS, HAVE COMPILED, EXAMINED, OR PERFORMED ANY PROCEDURES WITH RESPECT TO THE LIQUIDATION ANALYSIS CONTAINED HEREIN, NOR HAVE THE EXPRESSED ANY OPINION OR ANY OTHER FORM OF ASSURANCE ON SUCH INFORMATION OR ITS ACHIEVABILITY, AND ASSUME NO RESPONSIBILITY FOR, AND DISCLAIM ANY ASSOCIATION WITH, THE LIQUIDATION ANALYSIS.

*Significant Assumptions*

Hypothetical recoveries to stakeholders of the Company in a chapter 7 liquidation were determined through multiple steps, as set forth below.

The liquidation analysis is based on unaudited book values contained in the actual June 30, 2011 balance sheet and assumes that the Company's chapter 11 case is converted to a chapter 7 case on September 15, 2011 (the "Liquidation Date"). It also assumes that the liquidation of the Company would be completed by a chapter 7 trustee during a six month period after the Liquidation Date, during which time all of the Company's major assets would either be conveyed to the respective lien holders or sold and initial distributions to creditors would be made, net of liquidation-related costs. Although the liquidation of some assets might not require six months, other assets may be more difficult to collect or sell, thus requiring a liquidation period that could require substantially longer than six months. The liquidation period would allow for the collection of receivables, the orderly location and sale of trailer fixed assets, the orderly sale or abandonment of non-trailer fixed assets and the orderly wind-down of daily operations. For certain assets, estimates of the liquidation values were made for each asset individually. For other assets, liquidation values were assessed for general classes of assets by estimating the percentage recoveries that a trustee might achieve through an orderly disposition.

For the purposes of this liquidation analysis, the trailer assets owned by Stoughton and leased to the Company through capital lease financing were excluded from liquidation proceeds as described further in Note F herein.

*Estimate of Net Proceeds*

Estimates were made of the cash proceeds that might be received from the liquidation of our assets listed on our balance sheet, giving due consideration to the effects of the chapter 7 liquidation itself, including (1) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and advisors to such trustee (see below) and (2) the potential erosion in value of assets in a chapter 7 case in the context of the expedited liquidation required under chapter 7.

Liquidation values were assessed for general classes by estimating percentage recoveries of the book value of the asset that a chapter 7 trustee might achieve through the disposition.

*Estimate of Costs*

Proceeds from a chapter 7 liquidation would be reduced by administrative costs incurred during the wind-down of our operations, the disposition of assets and the reconciliation of claims against us. These liquidation costs include a chapter 7 trustee's professional (including attorneys, financial advisors, appraisers and accountants) and trustee fees, commissions, salaries, severance and retention costs, certain occupancy costs, the estimated holding costs for trailers over the relevant period and the estimated costs of shutting down current leasing facilities. Actual liquidation costs may exceed the estimate included in this liquidation analysis, particularly if the wind-down of operations, disposition of assets and reconciliation of claims takes longer than the assumed six-month wind-down period.

*Distribution of Net Proceeds under Absolute Priority*

The liquidation analysis assumes that liquidation proceeds would be distributed in accordance with section 726 of the Bankruptcy Code. If a chapter 7 liquidation were pursued for the Company, the amount of liquidation value available to unsecured creditors would be reduced, by the costs of the liquidation, including fees and expenses of the trustee appointed to manage the liquidation, fees and expenses of other professionals retained by the trustee to assist with the liquidation and asset disposition expenses; by the claims of secured creditors to the extent of the value of their collateral; and further reduced by the priority and administrative costs and expenses of the bankruptcy estates.

The liquidation itself would trigger certain priority payments that would be made in full before any distribution of proceeds to pay general unsecured claims or to make distributions in respect of equity interests. The liquidation would likely prompt certain other events to occur, including the rejection of remaining executory contracts and unexpired leases, including numerous real property and equipment leases, and defaults under agreements with customers to provide products and services. Such events would likely create a much larger number of unsecured creditors and would subject the chapter 7 estates to considerable additional claims for damages for breaches of those contracts or for the rejection of those contracts under the Bankruptcy Code. Such claims would

75

also materially increase the amount of general unsecured claims against the Company. No attempt has been made to estimate each and every additional general unsecured claim that might result in the event of a liquidation.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors, we have determined, as summarized in the charts below and in the section above titled "Best Interests Test," that our proposed Plan will provide creditors with a recovery that is not less than what creditors would receive pursuant to a liquidation of our assets under chapter 7.

The following liquidation analysis should be reviewed with the accompanying footnotes.

|  | Notes | Jun-11 Balance | Hypothetical Recovery (Percentage) | | Hypothetical Recovery (Amount) | | |
|---|---|---|---|---|---|---|---|
|  |  |  | Low | High | Low | High | Mid |
| Cash | A | 0 | 100% | 100% | 0 | 0 | 0 |
| Accounts Receivable, Net | B | 4,115 | 57% | 64% | 2,357 | 2,651 | 2,504 |
| Finance Lease Receivables | C | 460 | 45% | 70% | 207 | 322 | 264 |
| Prepaid Expenses & Deposits | D | 654 | 0% | 4% | 0 | 25 | 13 |
| Other Current Assets | E | 180 | 40% | 60% | 72 | 108 | 90 |
| Fixed Assets: |  |  |  |  |  |  |  |
| Company Trailers, Net (1) | F | 92,796 | 43% | 58% | 40,267 | 54,241 | 47,254 |
| Furniture & Fixtures, Net | G | 169 | 5% | 10% | 8 | 17 | 13 |
| Total Fixed Assets, Net |  | 92,965 | 48% | 68% | 40,275 | 54,258 | 47,267 |
| Intangibles | H | 923 | 0% | 0% | 0 | 0 | 0 |
| Other Assets (2) | I | 404 | 0% | 0% | 0 | 0 | 0 |
| **Gross Liquidation Proceeds** |  | **99,700** |  |  | **42,911** | **57,364** | **50,137** |
| Less: |  |  |  |  |  |  |  |
| Shut-down Costs | J |  |  |  | $2,309 | $2,309 | $2,309 |
| Trustee Fees | K |  |  |  | 1,287 | 1,721 | 1,504 |
| Professional Fees | L |  |  |  | 3,433 | 4,589 | 4,011 |
| **Total Liquidation Costs** |  |  |  |  | **7,029** | **8,619** | **7,824** |
| **Net Liquidation Proceeds Available for Secured Debt** |  |  |  |  | **$35,882** | **$48,745** | **$42,314** |
| **CLAIMS RECOVERY ANALYSIS** |  |  |  |  |  |  |  |
| First Lien Claims | M | $84,000 | 42.7% | 58.0% | $35,882 | $48,745 | $42,314 |
| Second Lien Claims | N | 27,100 | 0.0% | 0.0% | 0 | 0 | 0 |
| Other Secured Claims | O | 0 | N/A | N/A | 0 | 0 | 0 |
| Other Priority Claims | P | 200 | 0.0% | 0.0% | 0 | 0 | 0 |
| General Unsecured Claims | Q | 550 | 0.0% | 0.0% | 0 | 0 | 0 |

(1) The June 2011 balance displayed here reflects the value of company-owned trailers and excludes approximately $34 million of trailers owned by Stoughton, as further explained in Note F.
(2) The Company has reviewed potential avoidance actions that could hypothetically be commenced under Chapter 5 of the Bankruptcy Code. Without ascribing any value to any particular potential avoidance action, the Company does not believe that the aggregate net potential recoveries from the prosecution of any potential avoidance action would yield any net recoveries to the estate.

*Footnotes to the Liquidation Analysis*

Unless stated otherwise, the book values used in this liquidation analysis are the net book values of the Company's assets as of June 30, 2011. Actual results may vary significantly.

*Note A-Cash and Cash Equivalents*

The liquidation analysis is based on the assumption that operations during the liquidation period would not generate additional cash available for distribution. It is assumed that all cash and cash equivalents held in our accounts are available for distribution and thus 100% recoverable. As of June 30, 2011, the Company did not have any cash available for distribution.

*Note B-Accounts Receivable*

The analysis of accounts receivable assumes that a chapter 7 trustee would retain certain existing staff of the Company to handle an aggressive collection effort of outstanding trade accounts receivable from customers. Collectible accounts receivable are assumed to include all accounts receivable held by the Company and invoiced to the customer with the exception of all receivables outstanding in excess of 90 days, receivables for invoices sent prior to the rendering of services and certain receivables identified as troubled credits.

The liquidation value of accounts receivable is estimated by applying a discount factor partially based on historical collection trends. The result is assumed to be an estimate of the proceeds that would be available to a secured lender in an orderly liquidation scenario and takes into account the inevitable difficulty a liquidating company has in collecting its receivables and any concessions which might be required to facilitate the collection of certain accounts. Collections during a liquidation of the Company may be further compromised by the likely claims for damages for breaches of or the likely rejection of customer contracts as customers may attempt to set off or recoup outstanding amounts owed to the Company against such claims. These claims are difficult to estimate and no attempt to adjust the recovery for such items has been undertaken. As such, recoveries for accounts receivable may very well be overstated in the liquidation analysis.

The liquidation value of accounts receivable is estimated to be approximately 57% to 64% of the net book value of the accounts receivable.

*Note C-Finance Lease Receivables*

Finance Lease Receivables represent the present value of remaining payments due to be made by customers on account of certain trailer leases structured as capital leases on the Company's balance sheet. The Company retains title to the assets underlying these leases. In the event of liquidation, the Company can reclaim these trailers and sell to a third-party buyer or could sell the trailer to the leaseholder for a negotiated amount.

The liquidation value of finance lease receivables is estimated by applying a discount factor to the current receivable to approximate an estimate of the proceeds that may be received on a sale of these trailers to a third-party buyer or the leaseholder. The discount takes into account the inevitable difficulty a liquidating company has in collecting its receivables and concessions which might be required to facilitate the collection of certain accounts. Collections during a liquidation of the Company may be further compromised by the likely claims for damages for breaches of or the likely rejection of customer contracts as customers may attempt to set off or recoup outstanding amounts owed to the Company against such claims. These claims are difficult to estimate and no attempt to adjust the recovery for such items has been undertaken. As such, recoveries for finance lease receivables may very well be overstated in the liquidation analysis.

The liquidation value of finance lease receivables is estimated to be approximately 45% to 70% of the net book value of the finance lease receivable.

*Note D- Prepaid Expenses and Deposits*

Prepaid expenses and deposits include prepaid expenses related to prepaid rent, lease deposits, utility deposits and legal retainers. The unused portion of legal retainers is expected to be recovered in full. All other prepaid expenses and deposits are expected to have zero recovery value. Aggregate estimated recoveries for prepaid expenses and deposits are between approximately 0% and 4%.

*Note E-Other Current Assets*

Other current assets include sales tax escrow, prepaid business insurance premiums and certain employee advances. This analysis assumes that the sales tax escrow will be used to offset any outstanding sales tax payables outstanding as the Company's assets are liquidated and would eventually be exhausted pursuant to the liquidation process. The Company expects to recover the prorated unused portion of the business insurance premiums. The employee advances are expected to have zero recovery value. Aggregate estimated recoveries for other current assets are between approximately 40% and 60%.

*Note F-Fixed Assets: Trailers, net (Company Trailers)*

The Company's fixed assets consist primarily of dry-van and flat-bed truck trailer equipment. As of June 30, 2011, the Company held title to a portfolio of 9,202 trailers and 7 service vehicles ("Company Trailers"), with a net book value of approximately $92.8 million.

In June 2011, the first lien lenders retained a third-party appraiser to perform an asset valuation of the Company Trailers, which included an estimate of Orderly Liquidation Value ("OLV") of approximately $68.2 million, before consideration of liquidation expenses. The appraiser performed a desktop appraisal, which was conducted based on asset registers and/or other informational materials. As part of due diligence performed during the appraisal process, the appraiser visited several company locations to perform individual trailer evaluations on a selected sample of assets. On-site inspection did not occur for all of the trailers of the Company Trailers. For the purposes of the desktop appraisal report, the appraiser assumed that all trailers in inventory were generally in the same condition as the inspected units. The appraisers used a market or comparable sales approach in determining OLV. The primary intent of the market approach is to determine the desirability of the assets and recent sales or offerings of similar assets currently on the market in order to arrive at an indication of the most probable selling price for the assets being appraised. The appraisers also relied up on the cost approach as support for the appraised values given. The cost approach is based on the premise that the informed purchaser would pay no more for an asset than the cost of producing a substitute property with the same utility as the subject property.

The OLV scenario assumes that deployed trailers are removed from customer locations and transported to a series of regional locations for liquidation. A sudden liquidation of the Company's trailers would result in a void in the marketplace that would be both disruptive to customers' operations and very difficult to execute logistically. The appraisers' OLV valuation assumes assets are sold piecemeal, or through appropriate groupings, at a privately negotiated sale, properly advertised and professionally managed, by a seller obligated to sell over an extended period of time and is not necessarily reflective of the expectations of value due to a forced liquidation in bankruptcy. Due to the massive undertaking of locating and inventorying approximately 9,202 trailers, management has made certain assumptions to adjust the OLV estimate. The Company estimates that 20% to 40% of the Company Trailers will not be recoverable based on the experiences of other trucking companies in forced liquidation or foreclosure scenarios. Additionally, management estimates that of the recovered trailers, approximately 10% to 15% of the recovered trailers will not be maintained within industry standards. Management has estimated that repairs necessary to bring these trailer to "trade-ready" status would require expenditures of approximately $400-$500 per affected trailer and this amount has been deducted from the expected realizable value. The recovery rate for the Company Trailers is estimated to be approximately 43% to 58% of net book value.

In addition to the Company Trailers, the Company utilizes approximately leased 2,075 trailers in the ordinary course of its business. As of June 30, 2011, Stoughton owned approximately 2,060 of these trailers, with 1,847 of these trailers provided through capital lease financing ("Stoughton-Leased Trailers"). The Stoughton-Leased Trailers are included on the Company's balance sheet and had a net book value of approximately $34 million as of June 30, 2011. Under the Stoughton capital lease agreements ("Stoughton Leases"), Stoughton retains title to the Stoughton-Leased Trailers. The analysis assumes that the Stoughton Leases would be rejected by the Chapter 7 Trustee. While no third-party appraisal firm has performed an appraisal analysis on the leased Stoughton-Leased Trailers, using data from the third-party appraiser, the Company has estimated an OLV for the Stoughton-Leased Trailers. This OLV was calculated based on the OLV of "like assets" from a similar vintage, determined by the appraiser through its analysis of the Company Trailer fleet. Based on this estimated OLV and utilizing similar assumptions on the recoverability of assets as those described herein, management has concluded that there is

unlikely to be any residual value beyond the lease amounts owed to Stoughton under the Stoughton Leases and therefore no recovery would be available to other creditors on account of these leased trailers.

The remaining 17 trailers in the Company's fleet are leased from other non-affiliated entities under operating leases and are not included in fixed assets on the Company's balance sheet.

*Note G- Fixed Assets: Furniture and Fixtures, net*

The Company's furniture and fixtures consist primarily of office furniture, computer equipment, software and other items assumed to have a recovery rate of approximately 5% to 10% of net book value.

*Note H- Intangible Assets, net*

Intangible assets consist primarily of customer lists as well as other assets. Management assumes the intangible have zero recovery value in a chapter 7 liquidation.

*Note I-Other Assets*

Other assets include deferred expenses related to past financing activities. Management estimates no recovery value for these items.

*Note J-Administrative Expenses-Corporate/Facility Shut-Down*

Estimates for corporate payroll and operating costs incurred during the liquidation are based upon the assumption that certain branch location and corporate functions would be retained to oversee the liquidation process. The remaining staff would also be needed to maintain and close the accounting records and to complete certain administrative tasks including payroll and tax forms and records. Certain minimum staff would be required at the physical branch locations to monitor and accept units and complete the closure of the facilities during the   six months of the liquidation period.

Estimated wind-down costs of $2.3 million assume that the Company incurs an average of $386,000 per month for six months in fixed overhead and general and administrative expenses. For purposes of estimating the maximum liquidation value for the Company, no payments for employee retention or incentivization through the chapter 7 liquidation period are assumed to be made.

*Note K-Administrative Expenses-Chapter 7 Trustee*

Chapter 7 trustee fees include those fees associated with the appointment of a chapter 7 trustee in accordance with section 326 of the Bankruptcy Code. Trustee fees are calculated at a rate of approximately 3% of the total liquidation value of the Debtor entities.

*Note L-Administrative Expenses-Professionals and Other*

Chapter 7 professional fees include legal, appraisal, broker and accounting fees expected to be incurred during the liquidation period that are not already deducted from liquidation values. Professional fees are assumed to be 8% of the total liquidation value.

*Note M-First Lien Claims*

For purposes of the liquidation analysis, management has estimated the First Lien Claims at $84 million in the aggregate, including pre-petition accrued and unpaid interest.

*Note N-Second Lien Claims*

For purposes of this liquidation analysis, management has estimated the Second Lien Claims at $27.1 million in the aggregate, including pre-petition accrued and unpaid interest.

*Note O-Other Secured Claims*

For purposes of this liquidation analysis there are no Other Secured Claims estimated.

*Note P-Other Priority Claims*

Other Priority Claims include estimated accrued compensation and benefit amounts. The accrued compensation and benefit amounts exclude payments made pursuant to first day orders since this analysis assumes that the Company would file chapter 7 cases on September 15, 2011. Furthermore, claims entitled to priority under section 503(b)(9) of the Bankruptcy Code, include estimated Priority Tax Claims and Accounts Payable less than 20 days. Other Priority Claims are estimated to be $0.2 million.

*Note Q- General Unsecured Claims*

The liquidation analysis assumes that General Unsecured Claims will consist of pre-petition unpaid, unsecured obligations owed to, among others, vendors, customers, employees (other than priority claims of employees) and litigation parties. The liquidation analysis does not attempt to estimate additional General Unsecured Claims that would arise as a result of the rejection of executory contracts and leases that would otherwise be assumed under the Plan, and our failure to perform under existing contracts. The amount of such additional claims would likely be substantial. For purposes of this liquidation analysis, General Unsecured Claims in the aggregate are estimated to be $0.6 million.

**THESE ESTIMATED LIQUIDATION VALUES ARE SPECULATIVE AND COULD VARY DRAMATICALLY FROM THE AMOUNTS THAT MAY BE RECOVERED IN AN ACTUAL LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE. IN MANY CASES, OUR ASSETS MIGHT NOT COMMAND SIGNIFICANT PRICES IF PURCHASED FOR USES OTHER THAN THAT FOR WHICH THEY WERE DESIGNED.**

As described above, to estimate the liquidation proceeds we assumed that our assets are disposed of in a straight liquidation during the six-month wind-down period. Our belief that confirmation of the Plan will provide each holder of a claim in an impaired class with a recovery at least equal to the recovery that such holder would receive pursuant to a liquidation under chapter 7 of the Bankruptcy Code is based on a comparison of the liquidation values set forth in the liquidation analysis with our estimate of the value of the distributions to the holders of claims pursuant to the Plan. In preparing these analyses, we were assisted by Lazard Middle Market LLC, referred to herein as "Lazard," our financial advisor in connection with the Restructuring.