## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **PTL HOLDINGS LLC, et al.,**[1] | ) | Case No. 11-12676 (BLS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related Docket Nos. 13, 14, *223* |
| | ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(B) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (C) FORMS OF BALLOTS AND (II) CONFIRMING THE DEBTORS' PREPACKAGED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (WITH TECHNICAL AMENDMENTS)

The above-captioned debtors and debtors in possession (collectively, the "Debtors") having:[2]

　　　　a.　　commenced the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") on August 23, 2011 (the "Petition Date");

　　　　b.　　continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: PTL Holdings LLC (6723) and Premier Trailer Leasing, Inc. (3906). The Debtors' address is 3600 William D. Tate Avenue, Suite 300, Grapevine, Texas 76051.

[2] Unless otherwise noted, capitalized terms not defined herein shall have the meanings. ascribed in the Plan (as defined herein) and the "Rules of Interpretation" (set forth in Article II.D of the Plan), to the extent applicable, shall apply to the Confirmation Order (as defined herein).

c.      filed, on August 23, 2011, their (i) *Disclosure Statement for Solicitation of Acceptances of Prepackaged Joint Chapter 11 Plan of Reorganization* [Docket No. 14] (the "Disclosure Statement") and (ii) *Prepackaged Joint Plan of Reorganization of PTL Holding, LLC et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. 13] (the "Prepackaged Plan"), and filed on September 23, 2011, (iii) the *Plan Supplement with Respect to Prepackaged Joint Plan of Reorganization of PTL Holdings, LLC et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. 105] (the "First Plan Supplement"), the *Second Plan Supplement to Prepackaged Joint Plan of Reorganization of PTL Holdings, LLC, et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. 147 ] (the "Second Plan Supplement"), and the *Third Plan Supplement to Prepackaged Joint Plan of Reorganization of PTL Holdings, LLC, et al. Under Chapter 11 of the Bankruptcy Code,* [Docket No. 169] (the "Third Plan Supplement" and, together with the First Plan Supplement and the Second Plan Supplement, the "Plan Supplement"; the Prepackaged Plan, together with the Plan Supplement and as modified as set forth herein, referred to herein as the "Plan");

d.      distributed the Disclosure Statement and appropriate Ballots for voting in the Plan to Holders of Class 3 (First Lien Credit Agreement Claims) (the "First Lien Credit Agreement Claims Holders"), the only creditors entitled to vote on the Plan, on August 22, 2011, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and set the Voting Deadline as August 23, 2011 at 4:00 p.m. (prevailing Eastern Time), as evidenced by the

*Affidavit of Service and Vote Certification with Respect to the Tabulation of Ballots on*

*Prepackaged Joint Plan of Reorganization of PTL Holdings, LLC, et al., Under to Chapter 11 of*

*the Bankruptcy Code* [Docket No. 17] (the "Voting Certification");

       e.     filed, on August 23, 2011, the *Debtors' Motion for Entry of Order (A)*

*Scheduling an Objection Deadline and Combined Hearing on Their Disclosure Statement and*

*Plan Confirmation (B) Approving Form and Notice of Confirmation Hearing, (C) Establishing*

*Procedures for Objections to Their Plan and Disclosure Statement, (D) Approving Solicitation*

*Procedures and (E) Granting Related Relief* [Docket No. 19] (the "Scheduling Motion");

       f.     filed, on August 26, 2011 the *Summary of Plan of Reorganization and*

*Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of*

*Reorganization and Related Matters* [Docket No. 45], which contained the notice of the

commencement of the Chapter 11 Cases, the date and time set for the hearing to consider

approval of the Disclosure Statement and confirmation of the Plan, the deadline for filing

objections to the Plan and Disclosure Statement, and a summary of the Plan (the "Confirmation

Hearing Notice");

       g.     served, pursuant to the *Order (A) Scheduling an Objection Deadline and*

*Combined Hearing on the Debtors' Disclosure Statement and Plan Confirmation, (B) Approving*

*Form and Notice of Confirmation Hearing, Form of Ballot and Notices (C) Establishing*

*Procedures for Objections to Plan and Disclosure Statement, (D)Approving Solicitation*

*Procedures and (E)Granting Related Relief* [Docket No. 35] (the "Scheduling Order"), the

Confirmation Hearing Notice in accordance with the terms of the Scheduling Order as evidenced

by (i) the *Affidavit of Service of Monica A. Molitor* [Docket No. 45], (ii) the *Affidavit of Service of Gil Hopenstand re: Notice of Hearing re: Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters to be Held on October 3, 2011 at 10:00 a.m. (EDT)* [Docket No. 56], (iii) the *Supplemental Affidavit of Service of Stephanie Delgado re: Notice of Hearing re: Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters to be Held on October 3, 2011 at 10:00 a.m. (EDT)* [Docket No. 75], (iv) the *Affidavit of Service of Dina K. Whaley* [Docket No. 105]; and (v) the *Affidavit of Service of Linda M. Ellis [Docket No. 148]*, and the *Affidavit of Service of Curtis Hehn* [Docket No. 176], and (items (i), (ii), (iii), (iv) and (v) of this paragraph together, the "Confirmation Hearing Notice Affidavits");

h.      published, on August 30, 2011 in *USA Today*, as evidenced by the *Affidavit of Publication of Oxana Harris in USA Today re Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan or Reorganization and Related Matters* [Docket No. 71] (the "Publication Affidavit," and together with the Confirmation Hearing Affidavits, the "Notice Affidavits");

i.      filed, on August 31, 2011, their *Cure Payment Schedule for Executory Contacts and Unexpired Leases to be Assumed Pursuant to the Prepackaged Joint Plan of Reorganization of PTL Holdings LLC, et al., under Chapter 11 of the Bankruptcy Code.* [Docket No. 66] and related *Certificate of Service of Curtis A. Hehn* [Docket No. 65];

j.      filed, on or about September 28, 2011, *Declaration and Statement of Scott Nelson in Support of Prepackaged Joint Plan of Reorganization of PTL Holdings LLC, et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. 115] (the "Confirmation Declaration");

k.      filed, on September 28, 2011, the *Debtors' Memorandum of Law (I) in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of PTL Holdings, LLC, et al., Under Chapter 11 of the Bankruptcy Code* [Docket No. 114] (the "Confirmation Brief");

l.      filed on September 28, 2011, the [sealed] *Debtors' Memorandum in Support of Valuation Analysis Prepared by Lazard Middle Market LLC and Debtors' Reply to Plan Objection of Fifth Street Finance Corp.* [Docket No. 116] (the "Valuation Memorandum");

m.      filed on September 29, 2011, the *Notice of Errata to Correct Two Numbers in the Debtors' Memorandum in Support of Valuation Analysis Prepared by Lazard Middle Market LLC and Debtors' Reply to Plan Objection of Fifth Street Finance Corp.* [Docket No. 124];

n.      filed on October 12, 2011, the *Debtors' Proposed Findings of Fact and Conclusions of Law on Enterprise Value of Premier Trailer Leasing Inc.* (the "Valuation Findings of Fact and Conclusions of Law"); and

o.      these *Findings of Fact, Conclusions of Law and Order (1) Approving the Debtors' (A) Disclosure Statement Pursuant to Section 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Procedures and (C) Forms of Ballots and (II) Confirming the Debtors' Joint Prepackaged Plan of Reorganization Under to Chapter 11 of the Bankruptcy*

*Code, With Technical Amendments* (together with all the exhibits hereto, the "Confirmation Order").

The Court having:

a.    entered, on August 25, 2011, the Scheduling Order;

b.    set October 3, 2011, at 10:00 a.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing (as defined herein) pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.    reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Confirmation Declaration, the Voting Certification, the Notice Affidavits and all other filed pleadings, exhibits, statements, and comments regarding Confirmation, including any objections, statements and reservations of rights;

d.    held a hearing to consider the adequacy of the Disclosure Statement and the Confirmation of the Plan on October 3-5, 2011 (the "Confirmation Hearing") after due and sufficient notice of the Confirmation Hearing was given to appropriate parties-in-interest, including Holders of Claims against, and Interests in, the Debtors and other parties in interest in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, all as established and confirmed by the Notice Affidavits;

e.    at the Confirmation Hearing heard the statements, arguments and objections made by parties-in-interest and/or their counsel in respect of Confirmation;

      f.      considered all oral representations and arguments, testimony, documents, filings and other evidence regarding Confirmation;

      g.      taken judicial notice of all pleadings, orders and other documents filed, as wells as all evidence and arguments presented in the Chapter 11 Cases;

      h.      unless otherwise indicated, overruled any and all objections (to the extent not withdrawn) to the Plan, the Disclosure Statement and Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, including the objection [Docket No. 161] (the "Fifth Street Objection") filed by Fifth Street Finance Corp. ("Fifth Street"); provided, however, as set forth in the Opinion (as defined below), the Court has sustained the objection [Docket No. 136] (the "U.S. Trustee Objection") of the Office of the United States Trustee (the "U.S. Trustee") objecting to the scope of the proposed exculpation under Article XI.C of the Plan; and

      i.      issued an Opinion (the "Opinion") dated November 10, 2011 [Docket No. 215], resolving certain objections to the confirmation of the Plan, including the U.S. Trustee Objection and the Fifth Street Objection;

      NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for all parties-in-interest affected or to be affected by the Plan and the transactions contemplated thereby to object to Confirmation have been adequate and appropriate as to all parties, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the

Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

A.    **Findings and Conclusions.**  The findings and conclusions set forth herein and

in the record of the Confirmation Hearing and the Opinion constitute the Court's findings of

fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as

made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the

extent any of the following conclusions of law constitute findings of fact, they are adopted as

such.  If and to the extent that any findings of fact and conclusions of law set forth in the

Opinion are not set forth herein, all such findings of fact and conclusions of law are fully

incorporated herein by reference.

B.    **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).**  The

Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Approval of

the Solicitation and Solicitation Procedures (as each such term is defined herein), the

Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C.

§ 157(b) and the Court has jurisdiction to enter a final order with respect thereto.  The Debtors

are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper in this District

and before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan

proponents under section 1121(a) of the Bankruptcy Code.

C.     **Chapter 11 Petitions.**  On the Petition Date, each Debtor commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors or equity security holders has been appointed pursuant to section 1102 of the Bankruptcy Code.  The Court has ordered the procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

D.     **Judicial Notice, Objections.**  The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.  Any resolutions of objections to Confirmation explained on the record and approved at the Confirmation Hearing or in the Opinion are hereby incorporated by reference.  All unresolved objections, statements and reservations of rights are overruled on the merits.

E.     **Burden of Proof.**  The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  Each Debtor has met such burden.

**F.**      **Adequacy of Disclosure Statement.** The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, rules and regulations, including the Securities Act of 1933, as (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, and the transactions contemplated therein and (c) is approved in all respects.

**G.**      **Voting.** As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited properly and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule and regulation.

**H.**      **Solicitation.** Prior to the Petition Date, the Plan, the Disclosure Statement and the Ballot, and, subsequent to the Petition Date, the Confirmation Hearing Notice, were transmitted and served in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for the First Lien Credit Agreement Claim Holders, the only Class of Claims entitled to vote to accept or reject the Plan.

As set forth more fully in the Voting Certification, the period during which the Debtors solicited acceptances to the Plan was reasonable under the circumstances for the First Lien Credit Agreement Claims Holders, the only creditors entitled to vote on the Plan, to make an informed decision to accept or reject the Plan. In particular, and without limitation, (a) the

Plan, Disclosure Statement and the Ballot were transmitted to all First Lien Credit Agreement

Claims Holders, (b) sufficient and reasonable time and notice were prescribed for the First Lien

Credit Agreement Claims Holders to accept or reject the Plan, (c) the Ballots submitted by the

First Lien Credit Agreement Claims Holders were submitted by the Holders of record of the First

Lien Credit Agreement Claims Holders as of August 22, 2011 (the date specified in such

documents for the purpose of the solicitation) (the "Record Date") and (d) the establishment and

notice of the Record Date was appropriate and reasonable.  Pursuant to section 1126(f) of the

Bankruptcy Code, the Debtors were not require to solicit votes from the Holders of Claims in the

Classes listed in the chart below as each such Class is Unimpaired under the Plan and

conclusively presumed to have accepted the Plan.

| CLASS | DESIGNATION |
|-------|-------------|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |

The Debtors also were not required to solicit votes from the Holders of Claims or Interest in each

Class listed in the chart below, as each such Class is not entitled to receive any recovery from the

Debtors under the Plan, is impaired and, therefore, is deemed to reject the Plan pursuant to

section 1126(g) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|-------|-------------|
| Class 4 | Second Lien Credit Agreement Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | Intercompany Claims |
| Class 7 | Existing Equity and Membership Interests |

As described in and as evidenced by the Voting Certification and the Notice

Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, the

Confirmation Hearing Notice and publication of such Confirmation Hearing Notice (all of the foregoing, the "Solicitation") was timely, adequate and sufficient under the circumstances. The Solicitation of votes on the Plan complied with the solicitation procedures set forth in the Scheduling Motion (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable rules, laws, and regulations. The Debtors, Reorganized Premier, the Prepetition Agent, the First Lien Credit Agreement Lenders, and any and all of their respective affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys and advisors of each of the foregoing that may have solicited votes on the Plan or participated in the formulation of the Plan, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, therefore, are all entitled to the protections of section 1125(e) of the Bankruptcy Code.

I.    **Notice.** As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement and Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule or regulation and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

**J.    Plan Supplement.** The Debtors' Plan Supplement includes the following documents: (a) proposed Certificate of Incorporation; (b) proposed Bylaws; (c) list of proposed directors of Premier Trailer Leasing, Inc.; (d) list of proposed officers of Premier Trailer Leasing, Inc.; (e) proposed Nonstatutory Stock Option Notice; (f) proposed 2011 Stock Incentive Plan; (g) proposed Restricted Stock Agreement Under the 2011 Stock Incentive Plan; (h) proposed Stock Restriction Agreement; (i) List of Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Prepackaged Joint Plan of Reorganization of PTL Holdings, LLC, Et Al., Under Chapter 11 of the Bankruptcy Code (the "Rejection List"); (j) the Letter dated September 23, 2011 from PNC Bank to Premier Trailer Leasing, Inc., Re: $55,000,000 Senior Secured Credit Facility; (k) the Amended Rejection List, (l) the employment agreements of Scott Nelson and Curtis Sawyer, and (m) the draft *Revolving Credit and Security Agreement Among PNC Bank, National Association (As Issuer, Lender, Swingline Lender and as Agent), PNC Capital Markets LLC (As Lead Arranger) and Premier Trailer Leasing, Inc. (Borrower).* All such materials comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and no other or further notice is or shall be required. The Debtors are authorized to modify and amend the Plan Supplement in accordance with the Plan through and this Confirmation Order and including the Effective Date, and to take all actions necessary and appropriate to effect the transactions contemplated therein through, including and following the Effective Date, provided, however, that no such amendment or modification shall be made absent the consent of the Lenders.

**K.** **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**L.** **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** In addition to Administrative Claims (Article III.B of the Plan) and Priority Tax Claims (Article III.C of the Plan), which need not be classified, Article IV of the Plan classifies seven Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan and such Classes do not unfairly discriminate among Holders of Claims and Interests. The Plan therefore satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**M.** **Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article IV of the Plan specifies that Claims or Interests listed in the chart below are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |

**N.** **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article V of the Plan designates the Classes of Claims and Interests listed in the chart below as impaired and specifies the treatment of the Claims and Interests in those Classes within the meaning of

section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(3) of the Bankruptcy

Code.

| CLASS | DESIGNATION |
|---|---|
| Class 3 | First Lien Credit Agreement Claims |
| Class 4 | Second Lien Credit Agreement Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | Intercompany Claims |
| Class 7 | Existing Equity and Membership Interests |

**O.    Same Treatment of Claims in a Particular Class (11 U.S.C. § 1123(a)(4)).**

The Plan provides for the same treatment of each Claim or Interest in a particular class, as the

case may be, unless the Holder thereof has agreed to a less favorable treatment with respect to

such Claim or Interest.  As a result thereof, the requirements of section 1123(a)(4) of the

Bankruptcy Code have been satisfied.

**P.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  The Plan and the

various documents and agreements set forth in the Plan Supplement provide adequate and

proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the

Bankruptcy Code, including: (a) issue of New Equity Interests in Reorganized Premier; (b)

cancellation and discharge of Reorganized Premier's indebtedness under the First Lien Credit

Agreement and under the Second Lien Credit Agreement; (c) the discharge of Reorganized

Premier's indebtedness to the Holders of General Unsecured Claims; (d) the issuance of 100%

of the New Equity Interests in Reorganized Premier to the Holders of the First Lien Credit

Agreement Claims; (e) the assumption of certain unexpired leases and executory contracts by

Premier; (f) generally allowing for all corporate action necessary to effectuate the Plan,

including the appointment of the directors and officers of Reorganized Premier, execution and entry into the documents in substantially the form included in the Plan Supplement, execution and entry including, without limitation, entry into the ABL Facility; (g) the adoption and filing of the amended and restated certificates of incorporation and by-laws of Reorganized Premier; (h) the cancellation of Liens securing any Secured Claim (except Liens securing Secured Claims that are reinstated pursuant to the Plan); and (i) the identification of sources of consideration from which the Debtors will make distributions under the Plan.

Q.    **Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).** The Charter Documents for Reorganized Premier, filed as part of the Plan Supplement, as the same shall be amended prior to the Effective Date, prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

R.    **Designation of Officers and Directors (11 U.S.C. § 1123(a)(7)).** The Plan Supplement and Article VII.H of the Plan contain provisions with respect to the manner of selection of officers and directors of Reorganized Premier that are consistent with the interests of creditors, equity security holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

S.    **Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).** Pursuant to Article IV of the Plan the Classes of Claims and Interests listed in the chart below are impaired, as permitted by section 1123(b)(l) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---------|---------------------------------------|
| Class 3 | First Lien Credit Agreement Claims |
| Class 4 | Second Lien Credit Agreement Claims |
| Class 5 | General Unsecured Claims |

| Class 6 | Intercompany Claims |
|---------|---------------------|
| Class 7 | Existing Equity and Membership Interests |

Pursuant to Article IV of the Plan the Classes of Claims and Interests listed in the chart are

unimpaired, as contemplated by section 1123(b)( I) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|-------|-------------|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |

    **T.**    **Assumption and Rejection (11 U.S.C. § 1123(b)(2)).**  Article X of the Plan,

governing the assumption and rejection of contracts and unexpired leases provides that all

executory contracts and unexpired leases not previously assumed or rejected by Premier, or

subject to a pending motion to assume or reject, shall be assumed by Reorganized Premier, in

accordance with section 365 of the Bankruptcy Code, thereby satisfying section 1123(b)(2) of

the Bankruptcy Code.  The employment contracts of Scott Nelson and Curtis Sawyer shall be

assumed, as modified, by the employment agreements included in the Plan Supplement.

    Premier has exercised reasonable business judgment in determining whether to assume or

reject each of its executory contracts and unexpired leases, and each such assumption,

assumption and assignment or rejection shall be legal, valid and binding upon the parties thereto.

    Premier has provided adequate assurance of future performance for each of executory

contracts and unexpired leases being assumed pursuant to the Plan.  Premier has cured or

provided adequate assurance that Reorganized Premier will promptly cure all defaults arising

under or relating to each such assumed or assumed and assigned executory contract and

unexpired lease of the type required to be cured under section 365 of the Bankruptcy Code.  All

objections to the Debtors' assumption and assumption and assignment of executory contracts

pursuant to Article X of the Plan have been resolved.

U.      **Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).**  The provisions of the

Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

V.      **The Debtors' Compliance with the Bankruptcy Code (11 § 1129(a)(2)).**  The

Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

1.      each of the Debtors is an eligible debtor under section 109 of the

Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy

Code;

2.      the Debtors have complied with applicable provisions of the Bankruptcy

Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

3.      the Debtors have complied with the applicable provisions of the

Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any

applicable non-bankruptcy law, rule and regulation, the Scheduling Order and all other

applicable law, in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the

Disclosure Statement, Ballots and related documents and notices and in soliciting and tabulating

the votes on the Plan.

W.      **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**  The Debtors have

proposed the Plan (including all documents necessary to effectuate the Plan) and the

transactions contemplated in the Plan in good faith and not by any means forbidden by law,

thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the record of the Confirmation Hearing and other hearings held in the Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors.  The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's-length among representatives of the Debtors, the Prepetition Agent, the First Lien Credit Agreement Lenders, the ABL Lenders, and their respective professionals.  Further, the Plan's classification, indemnification, exculpation, release and injunction provisions (with the exculpation provision having been modified as set forth herein) have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129 and 1142 of the Bankruptcy Code, are fair and reasonable and an essential part of the Plan, and are each necessary for Premier's successful reorganization.

    **X.**    **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**  Any payment made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

    **Y.**    **Officers and Directors (11 U.S.C. § 1129(a)(5)).**  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons

proposed to serve as the initial officers and directors of Reorganized Premier's after

confirmation of the Plan have been fully disclosed to the extent available, and the appointment

to, or continuance in, such offices of such persons is consistent with the interests of Holders of

Claims and Interests and with public policy.  As set forth in the Plan Supplement, on the

Effective Date, the initial board of directors of Reorganized Premier shall consist of the

individuals identified in the Plan Supplement.  Each such individual and each member will

serve in accordance with the terms and subject to the conditions of the certificates of

incorporation and by-laws (or as set forth in the descriptions thereof) filed in the Plan

Supplement and any other relevant organizational documents, each as applicable.

       **Z.**      **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  The Plan does not provide for rate

changes by Reorganized Premier that may be subject to the jurisdiction of any governmental

regulatory commission or authority.  Thus, section 1129(a)(6) of the Bankruptcy Code is not

applicable in the Chapter 11 Cases.

       **AA.**    **Best Interest of Creditors (11 U .S.C. § 1129(a)(7)).**  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The evidence, including the liquidation analysis

provided in the Disclosure Statement, and otherwise submitted, proffered or adduced before or

at the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been

controverted by other evidence and (c) establishes that each Holder of an Impaired Claim or

Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim

or Interest, property of a value, as of the Effective Date, that is not less than the amount that

such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

**BB.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  The Classes of Claims and Interests listed in the chart below are Classes of Unimpaired Claims or Interest that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |

The Class of Claims listed in the chart below has voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Class does not include insiders of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code).

| CLASS | DESIGNATION |
|---|---|
| Class 3 | First Lien Credit Agreement Claims |

The Classes of Claims and Interests listed in the chart below are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 4 | Second Lien Credit Agreement Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | Intercompany Claims |
| Class 7 | Existing Equity and Membership Interests |

While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code, the Plan is

confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**CC.**    **Treatment of Administrative Claims, Priority Tax Claims, and Priority Claims (11 U.S.C. § 1129(a)(9)).**  The treatment of Administrative Claims pursuant to Article III.B of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Article III.C of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

**DD.**    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  As evidenced by the Voting Certification, the Class of Claims listed in the chart below voted to accept the Plan by the requisite numbers and amounts, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

| CLASS | DESIGNATION |
| --- | --- |
| Class 3 | First Lien Credit Agreement Claims |

**EE.**    **Feasibility (11 U.S.C. § 1129(a)(11)).**  The information in the Disclosure Statement, the Confirmation Declaration and the evidence proffered or adduced at the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been controverted by other evidence and (c) establishes that the Plan is feasible and that there is a reasonable prospect of Reorganized Premier being able to meet its financial obligations under the Plan and its business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Premier, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

FF.      **Payment of Fees (11 U.S.C. § 1129(a)(12)).**  As set forth in Article VII.S of the Plan, all fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

GG.      **Continuation of Employee and Retiree Benefits (11 U.S.C. § 1129(a)(13)).** The Debtors do not have any retiree benefits pursuant to Section 1129 (a)(13) of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

HH.      **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).**  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

II.      **Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).**  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

JJ.      **No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).**  The Debtors are each a moneyed, business or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**KK.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).** The Classes of Claims and Interests listed in the chart below have voted to reject, or are deemed to have rejected, the Plan.

| CLASS | DESIGNATION |
|---|---|
| Class 4 | Second Lien Credit Agreement Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | Intercompany Claims |
| Class 7 | Existing Equity and Membership Interests |

Based upon the evidence proffered, adduced and presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code; has been proposed in good faith, is reasonable and meets the requirement that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim in a Class senior to such Classes is receiving any property in excess of the amount of its Claim.

With specific regard to the Fifth Street Objection, the Court has made certain findings as set forth in the Opinion, including, without limitation, the following: (i) the Debtors presented to the Court a report and supplement thereto (the "LMM Valuation") prepared by their financial advisor and valuation expert, Lazard Middle Market LLC, setting forth a total enterprise value range for the Debtors from $76 million to $102 million, with a midpoint value of $89 million; (ii) Fifth Street presented to the Court a rebuttal report prepared by its valuation expert, Goldin Associates, Inc., and testimony challenging the LMM Valuation and setting forth a TEV range from $119 million to $159 million, with a midpoint value of $139 million; (iii) Fifth Street may

be entitled to a recovery in the Cases on account of its second lien debt only if the Court finds

that the reorganized Debtors' total enterprise value ("TEV") is greater than $110 million, given

the first lien creditors' claim of $84 million and $26 million in lease cure and assumption claims;

(iv) the LMM Valuation was prepared according to widely-accepted methodologies and

standards, and in reliance upon projections properly prepared by the Debtors' management; (v) if

and to the extent that Fifth Street's evidence may identify valid concerns with, or appropriate

adjustments to, the LMM Valuation, such concerns and adjustments are not sufficient to

materially affect or change the LMM Valuation; (vi) based on the LMM Valuation and evidence

presented by the parties and for the reasons set forth in the Opinion, the Debtors have carried

their burden in demonstrating that the Debtors' TEV is below the $110 million threshold and

thus insufficient to provide any recovery to Fifth Street; and (vii) based on the foregoing, the

Plan satisfies the fair and equitable standard and was proposed in good faith.

Accordingly, the Plan may be confirmed notwithstanding the deemed rejection of the

Plan by Classes 4-7.

**LL.    Only One Plan (11 U.S.C. § 1129(c)).**  The Plan is the only plan filed in each

of the Chapter 11 cases, and accordingly, section 1129(c) of the Bankruptcy Code is

inapplicable.

**MM.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**  The principal purpose

of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act.  Accordingly, the Plan satisfies the requirements of section 1129(d) the

Bankruptcy Code.

**NN.**    **Exemption from Securities Laws (11 U.S.C. § 1145).**  Pursuant to the Plan, any securities issued and any subsequent sales, resales, transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.  The Plan provides that issued securities will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(l) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and in compliance with any rules and regulations of the securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments and (b) the restrictions, if any, on the transferability of such security and instruments in the organizational documents set forth in the Plan Supplement or other constituent documents.

**OO.**    **Exemption from Transfer Taxes (11 U.S.C. § 1146(a).**  All transactions contemplated by the Plan, including the ABL Facility, and related and ancillary documents, and the purchase and sale transactions under the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment

**PP.**    **Modifications to the Plan.**  Any modifications to the Plan made in the Plan Supplement and/or set forth herein constitute technical changes or do not materially adversely affect or change the treatment of any Claims or Interests of any Holder and are in compliance

with section 1127 of the Bankruptcy Code.  Accordingly, pursuant to Bankruptcy Rule 3019,

these modifications do not require additional disclosure under section 1125 of the Bankruptcy

Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they

require that Holders of Claims or Interests be afforded an opportunity to change previously cast

acceptances or rejections of the Plan.

> **QQ.**   **Satisfaction of Confirmation Requirements.**  Based upon the foregoing, the

Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy

Code.

> **RR.**   **Implementation.**  All documents necessary to implement the Plan, including

those contained in the Plan Supplement, and all other relevant and necessary documents have

been negotiated in good faith and at arm's-length and shall, upon completion of documentation

and execution, be valid, binding and enforceable agreements and shall not be in conflict with

any federal or state law.

> **SS.**   **Injunction, Exculpation and Releases.**  The Court has jurisdiction under

sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation,

releases and injunction set forth in Articles XI.B, C, D and E of the Plan.  Section 105(a) of the

Bankruptcy Code permits issuance of the injunction and approval of the exculpation and

unopposed releases set forth in Articles XI.B, C, D and E of the Plan (with Article XI.C having

been modified as set forth herein), when, as has been established here based upon the record in

the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions

(a) were integral to the agreement among various parties in interest and are essential to the

formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy

Code, (b) confer substantial benefits on the Debtors' Estates, (c) are fair and reasonable and (d)

are in the best interests of the Debtors, their Estates and other parties-in-interest.  Further, the

exculpation provision in Article XI.C of the Plan does not relieve any party of liability for an

act or omission to the extent such act or omission is determined by a Final Order to have

constituted gross negligence or willful misconduct.  Pursuant to section 1123(b)(3) of the

Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation and injunction set

forth in the Plan and implemented by the Confirmation Order are supported by adequate

consideration and are equitable, reasonable and in the best interests of the Debtors,

Reorganized Premier, and Estates, creditors and equity holders (provided, however, the

exculpation has been modified as set forth herein).  The releases of non-Debtors in Article XI.E

of the Plan are fair to Holders of Claims because (1) they are voluntary, (2) only apply to

creditors in Class 3 (First Lien Credit Agreement Claims) who both voted to accept the Plan

and who "opted in" to grant such releases by checking the applicable "opt in" box in their

respective Ballots.  Such releases are given in exchange for and are supported by fair, sufficient

and adequate consideration provided by each and all of the Debtors releasees and the third

party releasees.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient

to support the releases, exculpation and injunction provided for in Articles XI.B, C, D and E of

the Plan; provided, however, Article XI.C has been modified as set forth herein.  Accordingly,

based upon the record of the Chapter 11 Cases, the representations and/or the evidence

proffered, adduced and/or presented at the Confirmation Hearing, the Court find that the

exculpation, releases and injunction set forth in Article XI of the Plan, as modified hereby, are consistent with the Bankruptcy Code and applicable law.

TT.    **Settlement.**  Except as otherwise provided in the Plan and the Confirmation Order, the Plan is a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that as or could have been commenced against the Debtors prior to the date of entry of the Confirmation Order (other than Reorganized Premier's ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Plan, including but not limited to the provisions of Articles VII.P and Article IX of the Plan).

UU.    **Good Faith.**  The Debtors and Reorganized Premier, parties granting the releases pursuant to Article XI.D of the Plan (the "Debtor Releasors") and the parties granting the releases pursuant to Article XI.E of the Plan (the "Third Party Releasors"), and the ABL Lender (defined below) and the respective affiliates, agents, directors, members, partners, officers, employees, advisors, attorneys, and other professionals retained by all of the foregoing Persons, will be acting in good faith if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (b) take the actions authorized and directed by the Confirmation Order.

VV.    **Exit Financing.**

*ABL Facility.*  The ABL Facility to be provided by PNC Bank, National Association (the "ABL Lender"), pursuant to the document listed as *Exhibit 2* to the Second Plan Supplement (the "Commitment Letter"), and the draft credit agreement in the Third Plan

Supplement, and the other definitive documents to be entered into substantially on the terms and

conditions set forth in the foregoing items together with all agreements, documents, instruments

and certificates related thereto (collectively, the "ABL Loan Documents"), is an essential

element of the Plan and the entry into and consummation of the transactions contemplated by the

ABL Facility is in the best interests of the Debtors, Reorganized Premier, the Estates and the

holders of all Claims and Interests.  The terms of the ABL Facility described in the Plan

Supplement have been negotiated in good faith and on an arm's-length basis, without the intent

to hinder, delay or defraud any of the Debtors' creditors and each party thereto may rely upon the

provisions of the Confirmation Order in implementing the terms of the ABL Facility.  The

availability of up to $55 million under the ABL Facility is necessary to the consummation of the

Plan and the operation of Reorganized Premier post-confirmation.  The terms and conditions of

the ABL Facility described in the ABL Loan Documents are fair and reasonable, are approved,

reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties,

are supported by reasonably equivalent value and fair consideration and are in the best interests

of the Debtors' Estates and their creditors.  The execution, delivery, or performance by the

Debtors or Reorganized Premier, as the case may be, of or in accordance with any documents

entered into in connection with the ABL Facility, in accordance with the ABL Loan Documents,

and compliance by the Debtors or Reorganized Premier, as the case may be, with the terms

thereof are authorized by, and will not conflict with, the terms of the Plan or the Confirmation

Order.  The financial accommodations to be extended pursuant to the ABL Facility and pursuant

to any ABL Loan Documents are being extended in good faith, for legitimate business purposes,

are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law. The ABL Loan Documents, including, without limitation, any subordination or intercreditor agreements relating thereto, when executed and effective, shall constitute legal, valid, binding and authorized obligations of Reorganized Premier enforceable in accordance with their terms and will not conflict with any federal or state law. The Debtors have provided sufficient and adequate notice of the terms of the ABL Facility and the credit arrangements set forth therein to all parties-in-interest as set forth in the Notice Affidavits and Publication Affidavits. On the Effective Date, all of the liens and security interests to be granted in accordance with the ABL Loan Documents (the "ABL Liens") shall be deemed approved and shall be legal, valid, binding, enforceable, and perfected liens on and security interests in the collateral for the ABL Facility, subject to no other liens or encumbrances except as permitted under the ABL Loan Documents. The ABL Liens shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. Reorganized Premier and the persons granted such liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order. The Debtors or Reorganized Premier, as applicable, are authorized, without further notice

to or action, order, or approval of this Court or any other Person, to enter into and fully perform their obligations under the ABL Facility consistent with the ABL Loan Documents, and execute and deliver all agreements, documents, instruments and certificates relating to the ABL Facility, and all fees, costs and expenses paid or to be paid by Reorganized Premier in connection with the ABL Facility are hereby ratified and approved.

 **WW.** **Valuation.** Pursuant to the valuation analysis in Article XVII of the Disclosure Statement, the Valuation Memorandum and the Valuation Findings of Fact and Conclusions of Law, and for the reasons set forth in the Opinion, the enterprise value of the Debtors is insufficient to support a distribution to Second Lien Credit Agreement Claims, General Unsecured Claims, Intercompany Claims, or holders of Existing Equity Interests and Membership Interests.  The valuation analysis set forth in the LMM Valuation was prepared by the Debtors' financial advisor, Lazard Middle Market LLC, in accordance with standard and customary valuation principles and practices, and sets forth a fair and reasonable estimate of the value of Premier's business as a going concern.

 **XX.** **Retention of Jurisdiction.** The Court may properly, and upon the Effective Date shall, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code, except, subsequent to the Effective Date, matters relating to the interpretation and enforcement of the ABL Loan Documents.

**ORDER**

 ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND

DETERMINED THAT:

1.      **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are each hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  Each finding of fact, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

2.      **Notice of the Confirmation Hearing.**  Notice of the Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law, and no further or additional notice was necessary or required.

3.      **Solicitation.**  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

4.      **Ballots.**  The Ballots are in compliance with Bankruptcy Rule 3018(c), conform to Official Form B14, and are approved in all respects.

5.      **The Disclosure Statement.**  The Disclosure Statement: (a) complies in all respects with any disclosure requirements of applicable non-bankruptcy law, including the

Securities Act, to the extent applicable, (b) contains "adequate information" (as such term is

defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with

respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in

all respects.  To the extent that the Debtors' solicitation of acceptances of the Plan is deemed to

constitute an offer of new securities, the Debtors are exempt from the registration requirements

of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to

such solicitation under section 4(2) of the Securities Act and Regulation D promulgated

thereunder.

> 6.      **Confirmation of the Plan.**  The Plan and each of its provisions shall be,

and hereby are, approved and CONFIRMED under section 1129 of the Bankruptcy Code.  The

documents contained in the Plan Supplement, including exhibits and attachments thereto, and the

execution, delivery and performance thereof, are authorized and approved.  The terms of the

Plan, including the Plan Supplement and their respective exhibits, are incorporated by reference

into and are an integral part of the Confirmation Order, and shall be effective and binding as of

the Effective Date of the Plan.

> 7.      **Objections.**  All objections, responses to, and statements and comments, if

any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those

withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing,

shall be, and hereby are, overruled in their entirety.

> 8.      **No Action Required.**  Pursuant to the appropriate provisions of the

Delaware General Corporation Law, including section 303 thereof, and the comparable

provisions of the Delaware Limited Liability Company Act, and section 1142(b) of the

Bankruptcy Code, no action of the respective directors, stockholders, managers, or members of

the Debtors or Reorganized Premier, as applicable, shall be required to authorize the Debtors or

Reorganized Premier, as applicable, to enter into, execute, deliver, file, adopt, amend, restate,

consummate or effectuate, as the case may be, the Plan and any contract, instrument or other

document to be executed, delivered, adopted or amended in connection with the implementation

of the Plan, including any documentation executed in connection with the ABL Facility.

9.      **Binding Effect.**  On or after entry of the Confirmation Order and subject

to the occurrence of the Effective Date, the provisions of the Plan and the Confirmation Order

shall bind the Debtors, Reorganized Premier, all Holders of Claims and Interests (irrespective of

whether such Claims or Interests are Impaired under the Plan or whether the Holders of such

Claims or Interests accepted or are deemed to have accepted the Plan), all entities that are parties

to or are subject to settlements, compromises, releases, discharges and injunctions described in

the Plan or herein, any and all non-Debtor parties to executory contracts and unexpired leases

with any of the Debtors, any other party in interest in the Chapter 11 Cases and the respective

heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

10.      **Free and Clear.**  Except as otherwise provided in the Plan or in the

Confirmation Order, from and after the Effective Date, Reorganized Premier shall be vested with

all property of the Estates, free and clear of all Claims, Liens, encumbrances, charges and other

interests of Holders of Claims or Interests pursuant to the terms of the Plan.  From and after the

Effective Date, Reorganized Premier may operate its business and use, acquire or dispose of

assets free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, the

Bankruptcy Court, or the Office of the United States Trustee (except for quarterly operating

reports and fees associated therewith) pursuant to the terms of the Plan.  In addition, on the

Effective Date, Reorganized Premier may engage in any other transactions in furtherance of the

Plan.  Specifically, without limiting the foregoing, on the Effective Date, and as a condition

precedent to the effectiveness of the Plan.

11.    **Authorizations to Take Acts Necessary to Implement Plan.**  The

Debtors or Reorganized Premier as applicable, and their officers, agents, or boards of directors

may take all actions to execute, deliver, file or record such contracts, instruments, releases, leases

and other agreements or documents and take such actions as may be necessary or appropriate to

effectuate and implement the provisions of the Plan without the need for any further notice to or

action, order or approval of the Bankruptcy Court, or other act or action under applicable law,

regulation, order or rule except for those expressly required pursuant to the Plan, or the ABL

Facility Documents.  All matters provided for pursuant to the Plan that would otherwise require

approval of the shareholders, directors, managers or members of the Debtors or Reorganized

Premier shall be deemed to have been so approved and shall be in effect prior to, on or after the

Effective Date (as appropriate) pursuant to applicable law and without any requirement of further

action by the shareholders, directors, managers or members of the Debtors, or the need for any

approvals, authorizations, actions or consents except as otherwise expressly required pursuant to

the Plan or the ABL Facility Documents.  On or prior to the Effective Date, or as soon as

thereafter as is practicable, Reorganized Premier shall file its amended certificates of

incorporation or other constituent documents with the applicable Secretary of State of the State

of Reorganized Premier's incorporation.

12.    **Effectiveness of All Actions.**  Except as set forth in the Plan, all actions

authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective

Date pursuant to the Confirmation Order, without the need for any further notice to or action,

order or approval of the Bankruptcy Court, or other act or action under applicable law,

regulation, order or rule except those expressly required pursuant to the Plan.

13.    **Officers and Directors.**  The structure and composition of the board of

directors of Reorganized Premier shall be as set forth in the Plan and Plan Supplement.  Each

director and officer thereof shall serve from and after the Effective Date pursuant to the terms of

the organizational documents set forth in the Plan Supplement or other constituent documents.

Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves as consistent

with the interests of Holders of Claims and Interests and with public policy the selection, election

and/or continuance, as the case may be, of these individuals; provided that nothing set forth

herein shall prevent any of the foregoing individuals from resigning or from being removed or

replaced as an officer or director without further order of the Court in accordance with the terms

of Reorganized Premier's organizational documents, as applicable.  On the Effective Date (or on

the Continuation Date with respect to any actions taken prior to the Effective Date), the adoption

and filing (as necessary) of any of Reorganized Premier's organizational documents not

otherwise specifically set forth in the Confirmation Order or the Plan, as the case may be, and all

other approvals and corporate actions contemplated by the Plan and the Confirmation Order and

not otherwise specifically enumerated in the Confirmation Order shall be authorized and approved in all respects, subject to the provisions hereof and in the Plan, and any other applicable law.

14.    **Compliance with Section 1123(a)(6) of the Bankruptcy Code.**  The amended and restated certificates of incorporation of Reorganized Premier as set forth or described in the Plan Supplement comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved.  The adoption and filing by Reorganized Premier of such certificates of incorporation is hereby authorized, ratified and approved.

15.    **Exemption from Securities Law.**  The issuance of the New Equity Interests and any other securities pursuant to the Plan and any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.  In addition, under section 1145 of the Bankruptcy Code, any security contemplated by the Plan and any and all settlement agreements incorporated therein, will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(l) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments and (b) the restrictions, if any, on the transferability of such security and instruments in the organizational documents set forth in the Plan Supplement or other constituent documents.

16.    **Cancellation of Existing Securities and Agreements.**  On the Effective

Date, except as otherwise specifically provided for in the Plan or the Confirmation Order: (a) the

obligations of the Debtors under the First Lien Credit Agreement, the Second Lien Credit

Agreement, and any other certificate, share, note, bond, indenture, purchase right, option,

warrant or other instrument or document directly or indirectly evidencing or creating any

indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or

Interest (except such certificates, notes, or other instruments or documents evidencing

indebtedness or obligations of the Debtors that are reinstated pursuant to the Plan), shall be

cancelled as to the Debtors, and Reorganized Premier shall not have any continuing obligations

thereunder; and (b) the obligations of the Debtors pursuant, relating or pertaining to any

agreements, indentures, certificates of designation, bylaws or certificate or articles of

incorporation or similar documents governing the shares, certificates, notes, bonds, indentures,

purchase rights, options, warrants or other instruments or documents evidencing or creating any

indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other

instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated

pursuant to the Plan) shall be released and discharged; provided that notwithstanding

Confirmation or the occurrence of the Effective Date, any such indenture or agreement that

governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes

of and solely to the extent necessary for allowing Holders to receive distributions under the Plan

and as provided in the Plan; provided, further, that the preceding proviso shall not affect the

discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to Reorganized Premier, except as provided in the Plan.

17.    **Dissolution of Holdings.**  On the Effective Date, Holdings shall be deemed to be dissolved for all purposes without further act or action under applicable law, regulation, rule or order and any assets of Holdings, including any causes of action, shall be transferred to Reorganized Premier.

18.    **Corporate Transfer.**  On the Effective Date or as soon as reasonably practicable thereafter, Reorganized Premier shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of disposition, transfer, dissolution or liquidation, including, without limitation of Holdings, containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation or any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

19.    **Release of Liens.**  Except as otherwise provided herein, in the Plan, the

ABL Loan Documents or in any contract, instrument, release or other agreement or document

created pursuant to the Plan, and without any prejudice to the rights of the Debtors, and the

lenders and agents under the ABL Facility on the Effective Date and concurrently with the

applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges

or other security interests against any property of the Estates (other than with respect to a

Secured Claim that is reinstated pursuant to the Plan), shall be fully released and discharged, and

all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges

or other security interests shall revert to Reorganized Premier and its respective successors and

assigns.  Pursuant to section 1142 of the Bankruptcy Code, all entities holding Claims against or

Equity Interests in the Debtors that are treated under the Plan and other parties in interest and

necessary parties shall be, and they hereby are, directed to execute, deliver, file, or record any

document, and to take any action necessary to implement, consummate, and otherwise effect the

Plan in accordance with its terms, and all such entities shall be bound by the terms and

provisions of all documents executed and delivered by them in connection with the Plan.

20.    **Compromise of Controversies.**  In consideration for the distributions and

other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a

good faith compromise and settlement of all Claims and controversies resolved under the Plan

and the entry of the Confirmation Order constitutes approval of such compromise and settlement

under Bankruptcy Rule 9019, subject to Article VII.P and Article IX of the Plan.

21.    **Assumption or Rejection of Contracts and Leases.**  Except as otherwise provided in the Plan, in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, Reorganized Premier shall be deemed to have assumed each of its executory contracts and unexpired leases to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (a) was previously assumed or rejected by Premier, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date or (d) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, if any, filed by any such Debtors as part of the Plan Supplement.  Such contract and lease assumptions are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections thereto, if any, are overruled.

22.    **Resolution of Contingent, Unliquidated and Disputed Claims.**  Except as otherwise set forth herein or by order of the Bankruptcy Court, Reorganized Premier shall have exclusive authority to file objections to, and settle, compromise, withdraw or litigate to judgment objections to any and all Disputed Claims as provided under the Plan.

23.    **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XV of the Plan.

24.    **ABL Facility.**  The loans and other extensions of credit contemplated by the proposed terms of ABL Facility and the granting of the ABL Liens to secure such loans and other extensions of credit are approved and authorized in all respects. The Debtors and Reorganized Premier, as the case may be, are authorized to undertake any and all acts and actions required to implement the ABL Facility, including without limitation, entering, executing, delivering, filing or recording any documents related thereto, including, without limitation, all related loan documents, as well as any other agreements, subordination or intercreditor agreements, instruments, or documents necessary or appropriate to implement the ABL Facility with such changes from the terms set forth in the ABL Facility Loan Documents as may be agreed to between and among the Debtors, Reorganized Premier, the ABL Lenders, and no board, shareholder, manager, or member vote shall be required with respect thereto.  The parties to the ABL Facility are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or appropriate to assist in the implementation of all transactions contemplated by the ABL Facility including, but not limited to, the execution, delivery, filing and recording of the documents and instruments as are necessary or appropriate to effectuate, evidence, implement or, consummate, perfect or preserve fully the ABL Facility and the security interests arising thereunder or related thereto, the Plan or the Confirmation Order.  The obligations under the ABL Facility and the ABL Loan Documents, including without limitation, all related mortgages and security agreements, shall, upon execution, constitute legal, valid, binding and authorized obligations of each of the respective parties thereto and Reorganized Premier, as applicable, enforceable in accordance with their terms, without further

notice to or action, order or approval of the Court or any other Person or other act or action under any state or federal law, and not in contravention of any state or federal law.  Reorganized Premier is authorized to pay the fees and expenses set forth or referred to in any commitment letter, term sheet, or financing fee letter associated with the ABL Facility, in accordance with the respective terms and to perform any indemnity obligations set forth or referred to therein, and to the extent any such payment or obligation has been made or performed, the payment or obligation is hereby ratified in this entirety.  Nothing in the Plan or the Confirmation Order shall be inconsistent with the terms of the ABL Facility.

25.    **ABL Liens.**  The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit (without further application to the Court) the execution, delivery, filing and recordation of the ABL Loan Documents and all transactions contemplated by such documents with respect to the ABL Facility.  The ABL Liens shall be legal, valid and enforceable liens and security interests, as provided in the ABL Loan Documents.  As of the Effective Date, the ABL Liens shall constitute legal, binding, valid and duly perfected liens against and security interests in the Collateral (as will be defined in the ABL Loan Documents), subject to no liens and encumbrances other than as permitted under the ABL Loan Documents.  In the event an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, the ABL Liens shall not be affected and shall continue in full force and effect in all respects and shall maintain their priorities and perfected status as provided in such documents until all obligations in respect thereof shall have been paid and satisfied in full.

26.    **No Fraudulent Transfer.**  Any consideration granted or payment made in connection with the ABL Facility or the ABL Loan Documents, including, without limitation, the ABL Liens and all related mortgages, security agreements, fees or expenses is or will be (as the case may be) and is hereby deemed to be granted or made in good faith, for good and valuable consideration and for legitimate business purposes as an inducement to the ABL Lender to extend credit under the ABL Facility and shall be, and hereby is, deemed not to constitute a fraudulent conveyance or fraudulent transfer under the Bankruptcy Code or under any state or federal laws and shall not be subject to avoidance, recovery, subordination, attack, offset, counterclaim, defense, "claim" (as such term is defined in the Bankruptcy Code) or recharacterization and shall not subject the ABL Lender to any liability by reason of incurrence of such obligations, grant of such consideration, Liens, mortgages or security interests, or payment of such fees and expenses.

27.    **Interpretation and Enforcement of ABL Loan Documents**. Notwithstanding anything to the contrary in the Confirmation Order or the Plan, the Court's retention of jurisdiction shall not govern matters relating to the interpretation or enforcement of the ABL Loan Documents or any Liens, rights or remedies related thereto except to the extent that the Confirmation Order has been vacated or reversed, but instead, such enforcement shall be governed as set forth in the ABL Loan Documents.

28.    **Professional Compensation.**  Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtors, the U.S. Trustee, and such other Entities who are designated by the Bankruptcy Rules,

the Confirmation Order or other order of the Court an application for final allowance of such Fee

Claim no later than 60 days after the Effective Date.  Objections to the final allowance of any

Fee Claim must be Filed and served on Reorganized Premier and the requesting party by the later

of (a) 60 days after the Effective Date and (b) 30 days after the Filing of the applicable request

for payment of the Fee Claim.  Notice of a hearing on the final allowance of Fee Claims shall be

provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

Reorganized Premier is authorized to pay compensation for professional services rendered and

reimbursement of expenses incurred after the Effective Date in the ordinary course of business

and without the need for Court approval.

29.   **Administrative Claims.**  Subject to the provisions of sections 328(a), 330

and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release and discharge

of, and in exchange for, each Allowed Administrative Claim, each Holder of such Allowed

Administrative Claim shall be paid in full in Cash the unpaid portion of such Allowed

Administrative Claim in accordance with the terms of the applicable contract or agreement

governing such Claim, if any, or otherwise in the ordinary course of business.

30.   **Discharge.**  As of the Effective Date, except as otherwise provided in the

Plan and the Confirmation Order, the Plan shall: (a) as provided in and pursuant to Article VII.Q

of the Plan, discharge and release all Claims, liens on, Interests and Causes of Action against

Reorganized Premier or any of its assets or properties of any nature whatsoever, including any

interest accrued on Claims or Interest from and after the Petition Date, whether known or

unknown, regardless of whether any property shall have been distributed or retained pursuant to

the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 5020) or 502(i) of the Bankruptcy Code, in each case whether or not a Proof of Claim was filed, such Claim was allowed or the Holder of such Claim has accepted the Plan and such discharge and release shall constitute a judicial determination of the discharge of all Claims and Interests and release of Liens.

31.    **Return of Deposits.**  All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Adequate Assurance Deposits"), including any deposit provided pursuant to any order of the Court approving the *Debtors' Motion of the Debtors for an Order Under Section 366 of the Bankruptcy Code (A) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (B) Deeming Utilities Adequately Assured of Future Performance, and (C) Establishing Procedures for Determining Adequate Assurance of Payment* [Docket No. 11], shall return such Adequate Assurance Deposits to Reorganized Premier, at the conclusion of the Chapter 11 Cases, if not returned or applied earlier.

32.    **Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**  The releases, injunctions, exculpations and related provisions set forth in Article XI.B, C, D and E of the Plan are hereby approved and authorized in their entirety; provided, however,

Article XI.C is hereby amended to provide in its entirety as follows and hereby approved and authorized in such form:

### C.    **Exculpation**

As of and subject to the occurrence of the Effective Date, each of the Debtors and their respective Agents shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Cases; *provided, however,* that the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

Unless otherwise provided in the Plan or this Confirmation Order, all injunctions and stays provided for in the Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.  From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or interest, (a) seeking to hold (i) the Debtors, Reorganized Premier or the Holders of the New Equity Interests, or (ii) the property of the Debtors, Reorganized Premier or the Holders of the New Equity Interests, liable for any Claim, obligation, right, interest, debt, or liability of the Debtors.

Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense, Interest, or other debt or liability that is stayed, Impaired, or terminated

pursuant to the terms of the Plan are permanently enjoined from taking any of the following

actions either (x) against the Debtors, Reorganized Premier, the Holders of the New Equity

Interests, or their property on account of all or such portion of any such Claims, Administrative

Expenses, Interests, debts, or liabilities that are stayed, Impaired, or terminated or (y) against any

Person with respect to any right of action or any objection to a Claim, Administrative Expense,

or Interest, which right of action or objection, under the Plan, is waived, released, assigned or

exclusively retained by any of the Debtors:  (a) commencing or continuing, in any manner or in

any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in

any manner any judgment, award, decree or order, (c) creating, perfecting, or enforcing any lien

or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against

any debt, liability, or obligation due; and (e) commencing or continuing, in any manner or in any

place, any action that does not comply with or is inconsistent with the provisions of the Plan.  To

avoid any doubt, except as otherwise expressly noted in the Plan, nothing in the Plan or herein

shall be construed or is intended to affect, enjoin, modify, release, or waive any claims, rights,

and actions that a third party may have against a person other than the Debtors, or Reorganized

Premier provided that such claims, rights, and actions are wholly separate and exist

independently from any claims, rights, and actions of the Estates.

     33.    **Release and Exculpation Provisions.**  All release and exculpation

provisions embodied in the Plan, including those contained in Articles XI.C, D and E of the Plan,

as modified hereby, are (a) fair, equitable, and reasonable, (b) given for valuable consideration

and (c) are in the best interest of the Debtors and all parties in interest, and such provisions are

approved and shall be effective and binding on all Persons and Entities, to the extent provided

therein.

34.    **Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of

title 28 of the United States Code shall be paid as and when due or otherwise pursuant to an

agreement between the Reorganized Premier and the United States Department of Justice, Office

of the United States Trustee, until such time as a chapter 11 case for a Debtor shall be closed and

Reorganized Premier shall pay any such fees as if no substantive consolidation has occurred for

purposes of the Plan.

35.    **Exemption from Transfer Taxes.**  The making, delivery, filing, or

recording at any time of any deed, mortgage, leasehold mortgage, deed to secure debt, leasehold

deed to secure debt, deed of trust, leasehold deed of trust, memorandum of lease, lease,

assignment, leasehold assignment, security agreement, financing statement, or other instrument

of absolute or collateral transfer required by, or deed necessary or desirable by the parties to, the

ABL Facility, and related and ancillary documents, and the purchase and sale transactions under

the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee,

intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax,

mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax

or governmental assessment.  All filing or recording officers (or any other Entity with authority

over any of the foregoing), wherever located and by whomever appointed, shall comply with the

requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such

tax or governmental assessment, and shall accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental

assessment. The Court shall retain specific jurisdiction with respect to these matters.

36. **Documents, Mortgages and Instruments.** Each federal, state,

commonwealth, local, foreign or other governmental agency is hereby authorized to accept any

and all documents, mortgages and instruments necessary or appropriate to effectuate, implement,

or consummate the transactions contemplated by the Plan and the Confirmation Order.

37. **Reversal/Stay/Modification/Vacatur of Confirmation Order.** Except

as otherwise provided in the Confirmation Order, if any or all of the provisions of the

Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of

the Court, or any other court, such reversal, stay, modification or vacatur shall not affect the

validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or

undertaken by the Debtors or Reorganized Premier, prior to the effective date of any such

reversal, stay, modification or vacatur, including, without limitation (a) the validity of any

obligation, indebtedness or liability incurred by Reorganized Premier to the ABL Lenders or (b)

the validity and enforceability of the ABL Liens. Notwithstanding any such reversal, stay,

modification or vacatur of the Confirmation Order, any such act or obligation incurred or

undertaken pursuant to, or in reliance on, the Confirmation Order prior to the effective date of

such reversal, stay, modification or vacatur shall be governed in all respects by the provisions of

the Confirmation Order and the Plan or any amendments or modifications thereto. Specifically,

notwithstanding any such reversal, stay, modification or vacatur of the Confirmation Order, any

obligation, indebtedness or liability incurred by the Debtors or Reorganized Premier under the

ABL Loan Documents (prior to written notice, as applicable, to the ABL Lenders, of the effective date of such reversal, stay, modification or vacatur) shall be governed in all respect by the provisions of the Confirmation Order and the Plan or any amendments or modifications thereto and the ABL Facility Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted herein and pursuant to the ABL Loan Documents.

38.    **Continued Effect of Stays and Injunction.**  All injunctions or stays provided in, or in connection with, the Chapter 11 Cases, whether pursuant to sections 105 or 362 of the Bankruptcy Code, or any other applicable law or court order, in effect immediately prior to the Confirmation of the Plan, shall remain in full force and effect thereafter, except as otherwise provided by the Confirmation Order, the Plan or their own terms.  Nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by the Confirmation Order.

39.    **Preservation of Causes of Action.**  Any Causes of Action that the Debtors may hold against any Entity are hereby preserved in accordance with Article VII.P of the Plan.

40.    **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Article XIV of the Plan.

41.    **Provisions of Plan and Confirmation Order Nonseverable and**

**Mutually Dependent.** The provisions of the Plan and the Confirmation Order, including the

findings of fact and conclusions of law set forth herein, are intended to be fully and intentionally

unequivocally integrated into a single nonseverable transaction and mutually dependent.

42.    **Modifications.** Without need for further order or authorization of the

Court, the Debtors or Reorganized Premier are authorized and empowered to make any and all

modifications to any and all documents included as part of the Plan Supplement, and any other

documents that are necessary to effectuate the Plan, that do not materially modify the terms of

such documents and are consistent with the Plan, and the ABL Facility.  Subject to certain

restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy

Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors

expressly reserves its respective rights to revoke or withdraw, or to alter, amend or modify

materially the Plan and the Plan Supplement with respect to such Debtor, one or more times,

after continuation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court

to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any

inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in a manner

consistent with the terms of the ABL Facility in such matters as may be necessary to carry out

the purposes and intent of the Plan.  Except as provided in the first sentence of this paragraph 42,

any such modification or supplement to the Plan shall be considered a modification of the Plan

and shall be made in accordance with Article XVII of the Plan.  Entry of the Continuation Order

means that all modifications or amendments to the Plan since the solicitation thereof are

approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional

disclosure or resolicitation under Bankruptcy Rule 3019, provided, however, that no such

modifications shall be made without the consent of the Lenders.

43.     **Governing Law.**  Except to the extent that the Bankruptcy Code or other

federal law is applicable, or to the extent the ABL Loan Documents  provide otherwise (in which

case the governing law specified therein shall be applicable to such document(s), the rights,

duties and obligations arising under the Plan shall be governed by, and construed and enforced in

accordance with, the laws of the State of Delaware without giving effect to the principles of

conflict of laws.

44.     **Applicable Non-Bankruptcy Law.**  Pursuant to sections 1123(a) and

1142(a) of the Bankruptcy Code, the provisions of the Confirmation Order, the Plan and related

documents or any amendments or modifications thereto shall apply and be enforceable

notwithstanding any otherwise applicable non-bankruptcy law.

45.     **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy

Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule or statement with

the Court or the Office of the United States Trustee is hereby waived as to any such list, schedule

or statement not filed as of the Confirmation Date.

46.     **Governmental Approvals Not Required.**  The Confirmation Order shall

constitute all approvals and consents required, if any, by the laws, rules or regulations of any

state or other governmental authority with respect to the implementation or consummation of the

Plan and Disclosure Statement, any documents, instruments, or agreements, and any

amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

47. **Notice of Confirmation Order.** In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of the Confirmation Order, substantially in the form annexed hereto as **Exhibit A**, to all parties who hold a Claim or Equity Interest in the Chapter 11 Cases, including those parties who have requested service of papers under Bankruptcy Rule 2002 and the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of the Confirmation Order.

48. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

49. **Waiver of Stay.** The stay of the Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rules 3020(e), 6004(h), 6006(d) and 7062(a), whether for fourteen (14) days or otherwise, is hereby waived, and the Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

50. **References to Plan Provisions.** References to Articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan except as specifically provided herein. The failure to specifically include or to refer to any particular article, section or provision of the Plan or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such

article, section or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be continued in their entirety.

51.    **Headings.**  Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or the Confirmation Order for any other purpose.

52.    **Effect of Conflict Between the Plan and Confirmation Order.**  If there is any inconsistency between the terms of the Plan and the terms of the Confirmation Order, the terms of the Confirmation Order shall govern and control.

53.    **No Waiver.**  The failure to specifically include any particular provision of the Plan in the Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

54.    **Final Order**.  The Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

55.    **Resolution of Internal Revenue Service Objection**

Notwithstanding any provision to the contrary in the Plan, the Order confirming the Plan, and any implementing Plan documents (collectively, "Documents"), nothing shall: (1) affect the ability of the Internal Revenue Service ("IRS") to pursue, to the extent allowed by non-bankruptcy law, any non-debtors for any liabilities that may be related to any federal tax liabilities owed by the debtors or the debtors' Estates; (2) affect the rights of the IRS to assert setoff and recoupment and such rights are expressly preserved, or affect the rights of the Debtors or Reorganized Premier to object to any asserted setoff or recoupment actions; (3) discharge any

claim of the IRS described in 11 U.S.C. Section 1141(d)(6); (4) limit the ability of the IRS to assert penalty claims under applicable federal law, subject to the Debtors' and Reorganized Premier's rights to object to any such asserted claims; (5) deem IRS claims, if any, to be adjusted or fixed on the Effective Date or prohibit the IRS from amending its claims; (6) limit the amount of the IRS claims to the amounts listed in the debtors books and records and nothing shall affect the applicability of Section 502 of the Bankruptcy Code to the claims of the IRS or the Debtors' or Reorganized Premier's right to object to any such claims; or (7) cause the automatic stay to be extended with respect to the IRS beyond the time provided for in 11 U.S.C. § 362(c)(2)(C).  To the extent any allowed IRS Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, the allowed IRS Priority Tax Claims shall be paid with interest from the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622.  IRS administrative expense claims, if any, shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  The Debtors and Reorganized Premier reserve any and all of their rights to object to any claims asserted by the IRS and further reserve their rights to recover any refunds in accordance with the provisions of the Internal Revenue Code.

### 56.    Resolution of Estate of Williams, et al. Objection.

Notwithstanding anything to the contrary in the Confirmation Order, or Plan, the *Motion for Relief from the Automatic Stay to Proceed Against Debtors up to the Amount of Insurance Coverage* [D.I. 98], is granted as set forth herein, and Paul Williams, Administrator of the Estate of Paul D. Williams, Deceased, and Marie Jones, Administratix of the Estate of Kevin

D. Jones, Deceased (collectively "Williams") shall have limited relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code and any and all injunctions, with respect to the Debtors, including but not limited to the Plan Injunction, to proceed with the action styled as *Paul Williams, Administrator of the Estate of Paul D. Williams, Deceased and Marie Jones, Administratix of the Estate of Kevin D. Jones, Deceased v. Expedited Logistic Solutions, LLC, Premier Trailer Leasing, Inc., Meadowlark Transport, Inc., Deere & Company, Deere & Company d/b/a J.D. Davenport Works, Arthur A. Davis, Nationwide General Insurance Company, Progressive Casualty Insurance Company*, Civil Action No: 10-CI-00612, in the Commonwealth of Kentucky, Pike Circuit Court (the "State Court Action") in order to collect upon any judgment Williams may obtain against Premier in such action solely from the proceeds of any applicable insurance coverage, provided that: (a) nothing contained herein shall be deemed a waiver of any rights or defenses to coverage, nor shall it be deemed a waiver of any rights, claims or defenses that Williams may have pursuant to the coverage from any insurer under any insurance policies applicable to Premier that may be implicated by the State Court Action; and (b) any self insured retention provisions of any such insurance policies shall remain in full force and effect.   Any and all claims asserted by Williams against any of the Debtors, to the extent they are determined to be allowed in the State Court Action, shall be treated as a Class 5 General Unsecured Claim against the Debtors in accordance with the Plan, with recovery limited solely to the proceeds of any applicable insurance.

Dated: November 29, 2011

HONORABLE BRENDAN D. SHANNON
UNITED STATES BANKRUPTCY JUDGE